In re SANDS BROTHERS & CO., LTD., Sands Brothers International, Ltd., and Martin S. Sands, Relators.

Sands Brothers & Co., Ltd., Sands Brothers International, Ltd., and Martin S. Sands, Appellants,

v.

Ashley B. Patten, Robert C. Karlseng, Joseph W. Grealish, Harry Jonathan Cooke, Linda P. Cooke, and RiverMusic, Inc., Appellees.

No. 05–05–01667–CV.

Court of Appeals of Texas, Dallas.

Aug. 15, 2006.

Ben L. Krage, Krage & Janvey, L.L.P., Dallas, for appellant.

Claude D. Rich, Rich & Associates, L.L.C., Dallas, for appellee.

Before Justices WHITTINGTON, O'NEILL, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

In these consolidated proceedings, Sands Brothers & Co., Ltd., Sands Brothers International, Ltd., and Martin S. Sands (collectively Sands Bros.) filed a petition for a writ of mandamus and an interlocutory appeal arguing the trial court erred when it granted Ashley B. Patten, Robert C. Karlseng, Joseph W. Grealish, Harry Jonathan Cooke, Linda P. Cooke and RiverMusic, Inc.'s motion to lift the stay which required Sands Bros. to appear in and defend against the lawsuit.

We conclude the trial court abused its discretion when it granted the motion to lift the stay which required Sands Bros. to appear in and defend against the lawsuit.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Patten, Karlseng, Grealish, the Cookes, and RiverMusic opened investment accounts with Sands Brothers & Co. On November 29, 2004, they sued Sands Bros. alleging (1) violations of the Deceptive Trade Practices Act; (2) conversion; (3) securities fraud; (4) breach of fiduciary duty; (5) negligence and gross negligence; (6) churning of the accounts; and (7) unjust enrichment. Sands Bros. moved to compel arbitration and stay further proceedings, which the trial court granted.

Patten, Karlseng, Grealish, the Cookes, and RiverMusic filed a motion requesting the trial court to lift the stay because Sands Brothers & Co. was no longer a member of the National Association of Securities Dealers and Rule 10301 of the NASD Code of Arbitration Procedure prohibits former members from enforcing arbitration agreements. After a hearing, the trial court denied the motion to lift the stay as premature because the application to terminate Sands Brothers & Co.'s membership with NASD was still pending.[1] After Sands Brothers & Co.'s membership with NASD was revoked, Patten, Karlseng, Grealish, the Cookes, and RiverMusic filed a motion for reconsideration of their motion to lift the stay because Sands Brothers & Co.'s membership in the NASD was revoked. Without a hearing, the trial court granted the motion to lift

---

1. There is no order in the clerk's record nor does the reporter's record contain a hearing on the motion to lift the stay. However, the trial court's docket sheet reflects the trial court denied the motion to lift the stay and the parties agree.

the stay and ordered Sands Bros. to appear in and defend against the case.

## PETITION FOR A WRIT OF MANDAMUS

In their petition for writ of mandamus, Sands Bros. argues the trial court abused its discretion when it (1) denied Sands Bros.'s motion to compel arbitration and to abate because the claims against them fall within the scope of the arbitration provision of the account contracts and the claims must be arbitrated pursuant to the Federal Arbitration Act; (2) failed to require Patten, Karlseng, Grealish, the Cookes, and RiverMusic to pursue arbitration before the New York Stock Exchange or other forum of their choosing; and (3) lifted the stay and denied Sands Brothers International and Sands's motion to compel arbitration. Patten, Karlseng, Grealish, the Cookes, and RiverMusic respond that the termination of Sands Bros.'s membership with NASD rendered the arbitration provision in the customer agreements voidable and it is irrelevant that the arbitration agreement provides for alternative sets of rules under which arbitration may be governed.

### Standard of Review

■ Traditionally, mandamus will not issue unless (1) the trial court has committed a clear abuse of discretion and (2) there is no adequate remedy by appeal. *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 215 (Tex.1999) (orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding)); *In re Tex. Am. Express, Inc.*, 190 S.W.3d 720, 723 (Tex.App.-Dallas 2005, orig. proceeding).

■ A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex.2005) (orig. proceeding); *In re Tex. Am. Express*, 190 S.W.3d at 723. In determining whether the trial court abused its discretion in the resolution of factual matters, the court of appeals may not substitute its judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *In re Sanders*, 153 S.W.3d 54, 56 (Tex.2004) (orig. proceeding); *In re Tex. Am. Express*, 190 S.W.3d at 724. A trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker*, 827 S.W.2d at 840; *In re Tex. Am. Express*, 190 S.W.3d at 724. Accordingly, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ. *Walker*, 827 S.W.2d at 840; *In re Tex. Am. Express*, 190 S.W.3d at 724. If the trial court did not abuse its discretion, it is error for the court of appeals to grant mandamus relief. *In re Sanders*, 153 S.W.3d at 56; *In re Tex. Am. Express*, 190 S.W.3d at 724.

### Analysis

■ A party seeking to compel arbitration under the FAA must establish that (1) there is a valid arbitration agreement and (2) the claims raised fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). Once the party seeking to compel arbitration has established an arbitration agreement exists under the FAA and the claims against it are within the scope of that agreement, the burden shifts to the party opposing arbitration to defeat the arbitration agreement with evidence preventing its enforcement. *See In re Oakwood Mobile Homes*, 987 S.W.2d 571, 573 (Tex.1999) (orig. proceed-

ing) (per curiam), *abrogated in part by In re Halliburton Co.,* 80 S.W.3d 566, 571–72 (Tex.2002) (orig. proceeding) (courts may consider both procedural and substantive unconscionability of arbitration agreement); *Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996) (orig. proceeding) (per curiam).

The standard customer agreement signed by Patten, Karlseng, Grealish, the Cookes, and RiverMusic contains an arbitration provision. The arbitration provision states, in part

All controversies that may arise between [the buyer] and [Sands Brothers & Co.], as introducing or clearing broker, [Sands Brothers & Co.'s] agents, or employees, concerning any transaction of the construction, performance, or breach of this or any other agreement between [the parties], whether such transaction or agreement was entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration held pursuant to the then current Constitution and Rules of the NYSE, or the Code of Arbitration Procedure of the NASD, or the provisions of the arbitration facility provided by any other exchange of which [Sands Brothers & Co.] [is] a member and on which a transaction giving rise to such claim took place, as [the buyer] may elect. Arbitration must be commenced by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate, therein electing the arbitration tribunal. In the event [the buyer] does mot [sic] make such designation within five (5) days of such demand or notice, then [the buyer] authorizes [Sands Brothers & Co.] to do so on behalf of [the buyer].

Under the terms of the standard customer agreement, the parties have agreed that "all controversies that may arise between [them] . . . shall be determined by arbitration" (if available with certain specified forums). The language that follows establishes the procedure for selecting the rules to be applied to the arbitration and the forum where the arbitration will occur. The arbitration clause gives the buyer the choice of rules that may be selected as follows: (1) the Constitution and Rules of the NYSE; (2) the Code of Arbitration Procedure of the NASD; or (3) the provisions of the arbitration facility provided by any other exchange of which Sands Brothers & Co. is a member.

The trial court initially granted Sands Bros.'s motion to compel arbitration and stay the proceedings. However, Patten, Karlseng, Grealish, the Cookes, and RiverMusic did not select the NASD Code of Arbitration Procedure as the rules to be applied, serve written demand or notice of their intention to arbitrate, or, within five days of serving their written demand or notice, designate the NASD as the forum. Instead, as they admit in their brief, they waited until Sands Brothers & Co.'s NASD membership was revoked and filed a motion to lift the stay and a subsequent motion for reconsideration. Their sole basis for arguing the trial court should lift the stay was that Sands Brothers & Co.'s membership in the NASD was revoked and Rule 10301 of the NASD Code of Arbitration Procedure prohibits firms whose membership has been revoked from enforcing predispute arbitration agreements with its customers.

■ To prevail on their motion to lift the stay or motion for reconsideration and defeat the arbitration agreement, Patten, Karlseng, Grealish, the Cookes, and River-Music had the burden of proving Rule 10301 prevented enforcement of the arbitration agreement because the trial court already determined there was an arbitration agreement and the claims fell within its scope. *See Oakwood Mobile Homes,*

987 S.W.2d at 573; *Cantella,* 924 S.W.2d at 944. It is undisputed that Sands Brothers & Co. is no longer an NASD member and that Patten, Karlseng, Grealish, the Cookes, and RiverMusic have not provided the written consent to arbitrate a claim before the NASD against a nonmember.

The NASD is a private, independent, self-regulating organization. *See Cantella,* 924 S.W.2d at 945. Rule 10301 of the NASD Code of Arbitration Procedure states

10301. Required Submission

(a) Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer. A claim involving a member in the following categories shall be ineligible for submission to arbitration under the Code unless the customer agrees in writing to arbitrate the claim after it has arisen:

1. A member whose membership is terminated, suspended, cancelled, or revoked;

2. A member that has been expelled from the NASD; or

3. A member that is otherwise defunct.

**2.** Three courts have interpreted Rule 10301(a) of the NASD Code of Arbitration Procedure. *See Galey v. World Marketing Alliance,* No. 4:04CV323, 2006 WL 1716871 (N.D.Miss. Jun. 19, 2006); *Elston v. Toma,* No. CV 01–1124–BR, 2004 WL 1048132 (D.Or. Apr. 15, 2004); *Provencio v. WMA Sec., Inc.,* 125 Cal. App.4th 1028, 23 Cal.Rptr.3d 524 (2005). The opinions of these courts involved the application of NASD Code of Arbitration Procedure Rule 10301(a) in a similar context.

*See* NASD Code Arb. P. Rule 10301(a), http://www.nasd.com (follow "arbitration and mediation" hyperlink; then follow "Code of Arbitration Procedure" hyperlink; then follow "Access Code of Arbitration Procedure in Our Online Manual" hyperlink; then follow "10301. Required Submission" hyperlink).

The NASD Uniform Forms Guide provides information and guidance on aspects of the arbitration process. *See* NASD Dispute Resolution Uniform Forms Guide 2 (Jan.2005), http://www.nasd.com/web/groups/med_arb/documents/ mediation_arbitration/nasdw_007954.pdf. The Uniform Forms Guide discusses Rule 10301 and states, in part

Under Rule 10301 of the Code, an NASD member firm whose membership is terminated, suspended, canceled, or revoked, or that has been expelled from the NASD or related exchange, or that is otherwise defunct is prohibited from enforcing predispute arbitration agreements with its customers to arbitrate at NASD unless the customers agree in writing to do so after the claim has arisen. If the customer chooses not to proceed with the claim in this forum, and has not agreed to arbitrate the claim in another forum, he or she may be able to bring this claim in court.

*Id.* at 5.[2]

The arbitration agreement allows Patten, Karlseng, Grealish, the Cookes, and

In *Galey,* the Galeys signed an arbitration agreement when they opened a new investment account with World Marketing Alliance. *See Galey,* 2006 WL 1716871 at *1. The arbitration agreement required all controversies arising out of the Galeys' accounts to be settled by arbitration in accordance with the rules of the NASD. *See id.* However, World Marketing Alliance allowed its membership with the NASD to lapse. *See id.* World Marketing Alliance argued NASD Rule 10301

RiverMusic to select the rules to be applied to the arbitration but limits that selection to the Constitution and Rules of the NYSE, the NASD Code of Arbitration Procedure, or the provisions of an arbitration facility provided by any other exchange of which Sands Brothers & Co. is a member. The arbitration agreement clearly provides for alternative forums. Patten, Karlseng, Grealish, the Cookes, and RiverMusic did not challenge the other forums agreed to by the parties in the arbitration agreement. Accordingly, Patten, Karlseng, Grealish, the Cookes, and RiverMusic failed to meet their burden to prove Rule 10301 of the NASD Code of Arbitration Procedure prevented the enforcement of the arbitration agreement. The trial court had no basis to set aside its order compelling arbitration and staying the proceedings because there were other possible forums for arbitration. Further, NASD Rule 10301 does not preclude Patten, Karlseng, Grealish, the Cookes, or RiverMusic from selecting NASD.[3] It only

should be disregarded based on the parol evidence rule. *See id.* The District Court for the Northern District of Mississippi concluded World Marketing Alliance failed to establish it had a right to arbitrate because the arbitration provision specifically incorporates the NASD rules and those rules control the arbitration of the action, so the parole evidence rule did not apply. *See id.* at *1–2.

In *Elston,* Elston opened a client account with United Pacific for the purchase of stock. *See Elston,* 2004 WL 1048132 at *8–9. The client account form contained an arbitration agreement that identified United Pacific as a member of NASD and required all controversies to be settled by arbitration in accordance with the NASD rules. *See id.* Elston sued United Pacific and the parties agreed to stay the lawsuit pending arbitration with NASD. *See id.* at *9. However, Elston received a letter from NASD stating United Pacific's membership was terminated and, although Elston may proceed to arbitrate his claims, he was not required to do so. *See id.* Elston rescinded his claim against United Pacific in the NASD arbitration forum. *See id.* at *10. In response, United Pacific sent Elston a letter stating he was required to either submit to arbitration or dismiss his claims and it would consider arbitration at either JAMS or AAA. *See id.* Elston agreed to arbitrate in another forum and designated one of the three arbitrators, but United Pacific insisted on NASD and did not designate an arbitrator. *See id.* The District Court of Oregon determined that the choice of NASD as the forum was an integral part of the arbitration agreement and, based on NASD Rule 10301(a), United Pacific did not have a reasonable expectation that it could enforce the arbitration agreement because its NASD membership was terminated. *See id.* at *11.

In *Provencio,* Provencio and Berke transferred their individual retirement accounts to WMA Securities. *See Provencio,* 23 Cal. Rptr.3d at 525. Their investment services contracts contained an arbitration agreement that required disputes to be arbitrated by NASD, pursuant to the NASD rules and procedures. *See id.* at 526. Provencio and Berke sued WMA Securities. WMA Securities filed a petition to compel arbitration. Provencio and Berke opposed arbitration, claiming WMA Securities was no longer a member of NASD, which precluded arbitration without their written consent. *See id.* at 525–26. WMA Securities contended, although it was no longer a member, NASD had previously accepted, without the claimant's consent, arbitration involving WMA Securities. *See id.* at 528. The California Court of Appeals noted that WMA Securities did not contend that arbitration was appropriate in a forum other than NASD and affirmed the trial court's order denying WMA Securities's petition to compel arbitration because NASD's disregard of its own rules in other cases did not strip Provencio and Berke of their right to rely on and enforce those rules. *See id.* at 527–28.

The facts of this case are distinguishable from *Galey, Elston,* and *Provencio.* In those cases, all of the arbitration agreements required arbitration only at the NASD, under the NASD rules and procedures in effect at the time, and did not provide for an alternative forum. Also, unlike in *Provencio,* Sands Bros. contends that, under the terms of the arbitration agreement, arbitration is appropriate at forums other than NASD.

3. Under Rule 10301 of the NASD Code of Arbitration Procedure and based on the commentary in the Uniform Forms Guide, when a

precludes Sands Brothers & Co. from enforcing the arbitration agreement at NASD.

We conclude the trial court abused its discretion when it granted the motion to lift the stay which required Sands Bros. to appear in and defend against the lawsuit.

## INTERLOCUTORY APPEAL

In their interlocutory appeal, Sands Bros. raises three issues that argue (1) Karlseng is barred by the doctrine of res judicata and Patten, Grealish, the Cookes, and RiverMusic are collaterally estopped from relitigating the matter; (2) the trial court erred when it lifted the stay because the parties' agreement provided forums for arbitration other than the NASD; and (3) the trial court erred when it lifted the stay as to all parties because, even if Sands Bros. & Co. may not invoke the arbitration provision of the customer agreements, Sand Bros. International and Sands retain their membership in the NASD. However, because we have granted Sands Bros. full relief under our mandamus jurisdiction, we dismiss the related interlocutory appeal as moot. *See In re D. Wilson Constr. Co.,* 196 S.W.3d 774 (Tex.2006) (orig. proceeding).

## CONCLUSION

The trial court abused its discretion when it granted the motion to lift the stay which required Sands Bros. to appear in and defend against the lawsuit. The petition for a writ of mandamus is **CONDITIONALLY GRANTED.** The trial court is **ORDERED** to dissolve its December 1, 2005, "ORDER ON PLAINTIFF'S MOTION TO LIFT STAY" and to compel arbitration. The writ of mandamus will issue only if the trial

court fails to comply with this Court's opinion.

Having conditionally granted the petition for a writ of mandamus under the FAA, we need not address the interlocutory appeal under the TAA. The interlocutory appeal is **DISMISSED.**

---

firm's membership with NASD is revoked, arbitration before NASD is allowed but only at the option of the customer. *See Elston,*

2004 WL 1048132 at *9; *Provencio,* 23 Cal. Rptr.3d at 527.