668 S.E.2d 430

Case No. 2005–CP–23–04718

Anna M. BUICE and Jerry W. Buice, Respondents,

v.

WMA SECURITIES, INC., Steeley Hubert Humphrey, Jr., Carl David Kennedy and W. Lindsey Howell, Defendants,

Of Whom WMA Securities, Inc., Steeley Hubert Humphrey, Jr. and Carl David Kennedy are Appellants.

Case No. 2005–CP–23–04719

Brenda B. Sprinkle, Respondent,

v.

WMA Securities, Inc., Steeley Hubert Humphrey, Jr., Carl David Kennedy, and W. Lindsey Howell, Defendants,

Of whom WMA Securities, Inc., Steeley Hubert Humphrey, Jr. and Carl David Kennedy are Appellants.

Case No. 2005–CP–23–04720

Haley Nicole Smith Williams, Respondent,

v.

WMA Securities, Inc., Steeley Hubert Humphrey, Jr., Carl David Kennedy and W. Lindsey Howell, Defendants,

Of Whom WMA Securities, Inc., Steeley Hubert Humphrey, Jr. and Carl David Kennedy are Appellants.

No. 4442.

Court of Appeals of South Carolina.

Heard Sept. 17, 2008.

Decided Oct. 14, 2008.

Anthony E. Rebollo, Carmen Vaughn Ganjehsani and Charles E. Carpenter, Jr., all of Columbia, for Appellant Carl David Kennedy, and Ellis M. Johnston, II and Joel M. Bondurant, Jr., of Greenville, for Appellants WMA Securities, Inc. and Steeley Hubert Humphrey, Jr.

Ben C. Harrison, Max Hyde and Jeremy A. Dantin, all of Spartanburg, for Respondents.

HEARN, C.J.:

Steeley Humphrey, and WMA Securities, Inc. (collectively Appellants) appeal the circuit court's denial of their Motion to Dismiss, or in the Alternative, to Stay and Compel Arbitration in an action filed by Respondents Jerry and Anna Buice, Brenda Sprinkle, and Haley Nicole Smith Williams (collectively Investors).[1]  We affirm as modified.

## FACTS

In early 1999, Investor Sprinkle met Howell, an agent/employee of WMAS, in the course of procuring supplemental health insurance for her elderly parents.  During several resulting conversations between the two, Howell inquired about assisting Sprinkle with other aspects of her financial planning.  Also during this same period, Sprinkle introduced Howell to several of her co-workers, including the Buices and Williams.  Investors allege Howell recommended purchasing variable universal life insurance policies (Policies) as safe and prudent investments through which each could earn enough profit to cover all future insurance premiums.  As a result of these conversations, and in reliance on Howell's advice, Investors separately purchased Policies between January of 1999, and June of 2000.[2]  The Investors' applications were identical,[3] and each included an Arbitration Agreement.

The Arbitration Agreement appears under the heading "CLIENT PRE–DISPUTE ARBITRATION" and in relevant part provides:

I (we) agree that unless unenforceable due to federal or state law, any controversy arising out of or related to my (our) accounts, the transactions with WMAS, its officers,

---

1.  Williams is not represented by counsel; however, she has agreed to be bound by the court's disposition of the case.

2.  Investors' complaints indicate the Buices invested $106,764.24, Sprinkle invested $95,828.00, and Williams invested $15,000.

3.  There are discrepancies between when Investors claim to have invested, and when documents submitted to the court indicate investments were made.  The New Account Applications included in the record indicate Williams signed on April 14, 1999; the Buices signed agreements on December 6 and 16, 1999; and Sprinkle signed an agreement on January 6, 2000.

directors, agents, registered representatives and/or employees for me (us), or related to this agreement or breach thereof, shall be settled by arbitration in accordance with the rules *then in effect* of the National Association of Securities Dealers, Inc. (NASD). Such arbitration shall follow the procedures as set forth by a national arbitration committee of the NASD. . . .

(emphasis added). The Arbitration Agreement concludes, in pertinent part:

I (we) understand that:

(1) ARBITRATION IS FINAL AND BINDING ON THE PARTIES (I.E., YOU AND WMAS).

(2) YOU AND WMAS ARE WAIVING RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

. . .

Following each of their investments, Investors contend they discovered Appellants had materially misrepresented and omitted vital information regarding the Policies, upon which they had relied in their purchase. Investors allege Appellants failed to disclose that the Policies were actually "mutual fund type account[s] 'wrapped' inside [ ] insurance polic[ies]" requiring the separate purchase of life insurance regardless of an individual's need for ancillary life insurance. Investors further maintain Howell failed to disclose the higher sales commission he stood to earn from the Policies as compared to other investment alternatives, or that the Policies are generally considered high-risk securities.

Originally, *Investors* filed the necessary paperwork with the NASD to bring their action in arbitration. (emphasis added). However, shortly after filing, Investors received a return letter from the NASD stating WMAS's NASD membership had been terminated, and Investors "[could], but [are] not required to, arbitrate [their] claim" based on NASD Code of Arbitration Procedure Rule 10301. Rule 10301[4] provides:

10301. Required Submission

(a) Any dispute, claim or controversy eligible for submission under the *Rule 10100* Series between a customer and a

---

4. NASD Rule 10301 was adopted on June, 11 2001.

member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer. A claim involving a member in the following categories *shall be ineligible* for submission to arbitration under the Code *unless the customer agrees in writing to arbitrate the claim* after it has arisen:

    1.  A member whose membership is *terminated,* suspended, canceled, or revoked;

    2.  A member that has been expelled from the NASD; or

    3.  A member that is otherwise defunct.

(emphasis added).

Investors then filed suit in circuit court against Carl Kennedy,[5] Howell, Humphrey, and WMAS, asserting eight causes of action: (1) violation of South Carolina's securities laws; (2) breach of fiduciary duty; (3) negligence; (4) breach of contract; (5) breach of covenant of good faith and fair dealing; (6) fraud; (7) breach of contract accompanied by a fraudulent act; and (8) control person liability. Kennedy, WMAS and Humphrey filed a Motion to Dismiss or in the Alternative, to Stay and Compel Arbitration. A hearing was held, and relying on Rule 10301 and a perceived ambiguity, the circuit court denied all the motions by written order. Ensuing Motions to Reconsider were also denied. This appeal followed. Before oral arguments to this court, Investors and Kennedy agreed by stipulation that Investors' claims against him are subject to arbitration before the NASD, and, therefore, Kennedy's appeal was dismissed.

## STANDARD OF REVIEW

"The determination of whether a claim is subject to arbitration is subject to de novo review." *Wellman, Inc. v. Square D Co.,* 366 S.C. 61, 67, 620 S.E.2d 86, 89 (Ct.App.2005). However, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings.

---

5.  Kennedy was also an agent/employee of WMAS and was Howell's immediate supervisor.

*Thornton v. Trident Med. Ctr., L.L.C.,* 357 S.C. 91, 94, 592 S.E.2d 50, 51 (Ct.App.2003).

## LAW/ANALYSIS

### I. WMAS

■ WMAS first contends the agreement entered into by the parties stipulates that NASD rules "then in effect" would govern any dispute arising from the agreement, and that because Rule 10301 did not exist at the time the parties signed their agreement, it should have no applicability. WMAS also contends the circuit court erred in refusing, assuming Rule 10301's applicability, to compel arbitration, where the rule does not preclude arbitration, and the parties entered into an otherwise contractually binding arbitration agreement with respect to claims arising out of the contract. We disagree.

The crux of the analysis of the arbitration agreement hinges on a determination of how the phrase "then in effect" modifies the set of NASD rules to be applied in the arbitration. We find the phrase "then in effect" clearly and unambiguously refers to the NASD rules existing at the time the matter is sent to arbitration. *Hawkins v. Greenwood Dev. Corp.,* 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct.App.1997) ("The construction of a clear and unambiguous contract is a question of law for the court."). Our analysis is bolstered by four previous decisions of courts around the country that have had the occasion to interpret NASD Rule 10301's effect on a terminated member's right to still compel arbitration after the rule's enaction. *See In re Sands Bros. & Co., Ltd.,* 206 S.W.3d 127 (Tex.App.2006); *Galey v. World Marketing Alliance,* 2006 WL 1716871 (N.D.Miss.2006); *Provencio v. WMA Sec., Inc.,* 125 Cal.App.4th 1028, 23 Cal.Rptr.3d 524 (2005); *Elston v. Toma,* 2004 WL 1048132 (D.Or.2004). Moreover, similar to the *Elston* court's deconstruction of a comparable contractual clause, we find WMAS' inclusion of the NASD as the specified arbitration forum and applicable rules, limits its ability to make a colorable argument that arbitration should be enforced despite the clear exclusion under NASD Rule 10301 for those whose memberships have been terminated. This is also represented in the legislative history of Rule 10301, where the NASD explained:

NASD Dispute Resolution believes that the proposed rule change is consistent with the provisions of Section 15A(b)(6) of the [Securities and Exchange Act of 1934] which requires, among other things, that the Association's rules must be designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, and, in general, to protect investors and the public interest. Because terminated, suspended, barred or otherwise defunct firms have a significantly higher incidence of non-payment of arbitration awards than do active firms, NASD Dispute Resolution believes that the proposed rule change will protect investors and the general public by giving customers greater flexibility to seek remedies against such firms.

66 Fed. Reg. 13362, 13364 (proposed Mar. 5, 2001). As a result, we affirm the circuit court's finding that Investors' claims against WMAS should be sent to arbitration only at their discretion, by subsequent written request as outlined by Rule 10301.

## II. Humphrey

■ In addition, all parties to this appeal agree that WMAS and Humphrey's interests are identical. Nevertheless, the circuit court's order on appeal specifically delineates the two parties separately, and applies differing logic and legal analysis to uphold its finding that neither party should be able to compel arbitration. The basis upon which the circuit court denied Humphrey's Motion to Compel Arbitration was that the contract was ambiguous. We find this was error.

■ "It is a question of law for the court whether the language of a contract is ambiguous." *S.C. Dep't of Natural Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001). Because an arbitration clause is a contractual term, general rules of contract interpretation apply where the court must determine the clause's applicability. *Towles v. United Healthcare Corp.*, 338 S.C. 29, 37, 524 S.E.2d 839, 844 (Ct.App.1999). In determining as a matter of law whether a contract is ambiguous, the court must consider the contract as a whole, rather than deciding whether phrases in isolation could be interpreted in various ways: "[O]ne may not, by pointing out a single sentence or clause, create an ambiguity."

*Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976). "Whether a contract is ambiguous is to be determined from the entire contract and not from isolated portions of the contract." *Farr v. Duke Power Co.*, 265 S.C. 356, 362, 218 S.E.2d 431, 433 (1975). Further, in determining the intent of the contracting parties, the court should construe the contract as a whole, and read together different provisions dealing with the same subject matter. *Skull Creek Club Ltd. P'ship v. Cook & Book, Inc.*, 313 S.C. 283, 286, 437 S.E.2d 163, 165 (Ct.App.1993).

In finding the arbitration agreement ambiguous, the circuit court held:

> The first paragraph of the agreement references "WMAS, its officers, directors, agents, registered representatives and/or employee." ... The [ ] paragraph [immediately following] states, in pertinent part: I (we) understand that: (1) ARBITRATION IS FINAL AND BINDING ON THE PARTIES (i.e., YOU AND WMAS).... This Court finds that this second paragraph is set forth with greater emphasis than the first and is inconsistent with the preceding paragraph as to who is to be controlled by the arbitration agreement.

We find there is no inconsistency or ambiguity between the clauses. Even acknowledging a difference, the most logical explanation is that the language of the first paragraph actually creates the agreement to arbitrate, and the second paragraph merely summarizes that agreement.

Moreover, assuming without deciding that the two clauses are incompatible, the first clause should be given greater weight. Our Supreme Court has held that where "there are two incompatible ... clauses [in a contract] the first will prevail over the latter." *Phipps v. Hardwick*, 273 S.C. 17, 24, 253 S.E.2d 506, 510 (1979). Further, where two clauses are incompatible, "the [clause] which essentially requires something to be done to effect the general purpose of the contract is entitled to greater consideration than the other." 17A Am.Jur.2d *Contracts* § 384 (2008). Here, the first paragraph of the Arbitration Agreement defines how an account holder would handle a dispute, which is an operative, rather than descriptive, clause. The second paragraph merely describes

158

or summarizes the first. Under this view, the first paragraph, with its reference to WMAS's officers, directors, agents, registered representatives, and employees, would control.

Even though we disagree with the circuit court's finding that the provision is ambiguous, we nevertheless affirm its decision to deny Humphrey's Motion to Compel Arbitration. At this stage of litigation, we are willing to accept the parties' determination of their own rights, and both Humphrey and WMAS have taken the position before the circuit court and this court that their interests are indistinguishable. Accordingly, our finding above on Rule 10301 mandates affirmance of the circuit court's denial of Humphrey's Motion to Compel. The order of the circuit court is

**AFFIRMED AS MODIFIED.**

PIEPER, J., and CURETON, A.J., concur.