Fabricant, Judith, J.
INTRODUCTION
This action arises from alleged misconduct of a securities broker-dealer and its representative in managing investments for the plaintiffs. Before the Court is the motion of two defendants, broker-dealer Brewer Financial Services, LLC, and its representative, Gregory Friel, to dismiss or to compel arbitration, based on an arbitration provision in a written contract. Plaintiffs contend that the arbitration provision is unenforceable because the defendant broker-dealer is no longer a member of the Financial Industry Regula *316 tory Authority (FINRA). For the reasons that will be explained, the Court will order arbitration.
BACKGROUND
The plaintiffs’ amended complaint alleges the following. At some time prior to 2008, defendant Gregoiy Friel was a registered representative for Ameriprise Financial Services, Inc., and managed investments for the plaintiffs, Paul and Marilyn Bedard. When Friel left Ameriprise for other employment in 2008, the Bedards followed, transferring their accounts first to defendant New England Securities, and then to defendant Brewer Financial Services, LLC. Unbeknownst to the Bedards, Friel’s changes of employment were a result of accusations against Friel of improprieties in the handling of customer accounts at Ameriprise. Those accusations led to an order issued by FINRA limiting Friel’s activities. NES, and later Brewer, and Friel, did not comply with that order, and concealed it from the Bedards.
In 2009, the Bedards learned that their transfer of funds from Ameriprise to NES, and then from NES to Brewer, accomplished according to Friel’s instructions, subjected them to adverse tax consequences. On further investigation through a new advisor, the Bedards discovered that Friel had recommended investments that were inappropriate for them, had made misrepresentations to them regarding those investments, and had sold them unregistered securities, which they were not qualified to purchase as unaccredited investors. As a result, the Bedards have lost investment funds, incurred unnecessary tax liabilities, and incurred expenses for professional services in connection with tax disputes. They made a demand for compensation from Brewer’s insurer, defendant Scottsdale Insurance Company, but Scottsdale has not made a reasonable offer of settlement.
Based on these allegations, the Bedards assert the following counts: negligence against NES, Brewer, and Friel (count I); negligent retention, hiring and supervision (count II); breach of fiduciary duties against NES, Brewer, and Friel (count III); negligent misrepresentation against NES, Brewer, and Friel (count IV); violation of the Massachusetts Securities Act, G.L.c. 110A, §101 et seq., against Brewer and Friel (Count V); “unsuitability” against Brewer and Friel (count VI);[1] unfair claim settlement practices against Scottsdale (count VII); negligent infliction of emotional distress against all defendants (count VIII); and violation of G.L.c. 93A against all defendants (coant IX).
In response to the claims against them, Brewer and Friel have moved to dismiss the complaint or to compel arbitration. They rely on paragraph 38 of Brewer’s Customer Agreement, which is incorporated into the IRA Applications executed by each of the Bedards. Paragraph 38, which is labeled “Pre-Dispute Arbitration Agreement,” provides as follows:
This agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement the parties agree as follows:
(A) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
(B) Arbitration awards are generally final and binding; a party’s ability to have a court reverse or modify an arbitration award is very limited.
(C) The ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings.
(D) The arbitrators do not have to explain the reason(s) for their award.
(E) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
(F) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.
(G) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.
All controversies that may arise between me, You and NFS'[2] concerning any subject matter, issue or circumstance whatsoever (including, but not limited to, controversies concerning any account, order or transaction, or the continuation, performance, interpretation, or breach of this or any other agreement between me, You and NFS whether entered into or arising before, on or after the date this account is opened) shall be determined by arbitration in accordance with the rules then prevailing of the Financial Industry Regulatory Authority (FINRA) or any United States securities self-regulatory organization or United States securities exchange of which the person, entity or entities against whom the claim is made is a member, as I may designate.
The designation of the rules of a United States self-regulatoiy organization or United States securities exchange is not integral to the underlying agreement to arbitrate.
DISCUSSION
The contract language on its face unequivocally requires arbitration of all disputes between Brewer and the Bedards as its customers, and precludes litigation in court of any such disputes. The Bedards nevertheless resist enforcement of this provision on the ground that arbitration cannot occur before FINRA, or before any other “securities self-regulatory *317 organization or United States securities exchange” of which Brewer is a member, as specified in the agreement, because Brewer is no longer a member of FINRA, having been expelled from it as a result of regulatory action against it by the Securities and Exchange Commission, and is not a member of any other exchange.[3] The Bedards also contend that, even if the arbitration agreement were enforceable as between them and Brewer, they are free to litigate their claims against Friel, because he is not a party to the agreement.
Not surprisingly, circumstances similar to those presented here have arisen before, and have given rise to a series of decisions in other jurisdictions. Several Courts have declined to order arbitration, on the theory that arbitration provisions similar, but not identical, to this one effectively incorporate FINRA Rule 12202, which provides that a claim against a member who has been expelled, or whose membership has been terminated, “is ineligible for arbitration under the [FINRA] Code unless the customer agrees in writing to arbitrate after the claim arises.”[4] See, e.g., Galey v. World Marketing, 510 F.3d 529 (5th Cir. 2007); Dover Ltd. v. A.B. Watley, Inc., 2006 WL 2987054 (S.D.N.Y.); Buice v. W.M.A. Securities, Inc., 668 S.E.2d 430 (S.C.Ct.App. 2008).
Other courts have looked to the particular terms of the arbitration provision, to determine whether incorporation of the rules of FINRA, or another identified organization, is integral to the agreement, or is merely an “ancillary logistical concern.” Brown v. ITT Consumer Financial Corp, 211 F.3d 1217, 1222 (11th Cir. 2000); see Reddam v. KPMG LLP, 457 F.3d 1054 (9th Cir. 2006); Branch v. Sickert, 2011 WL 796783 at *5 (N.D.Ga. 2011); see also Galey v. World Marketing, supra 510 F.3d at 533, citing Nat’l Iranian Oil Co. v. Ashland Oil Co., 817 F.2d 326, 333 (5th Cir. 1987).
The agreement between these parties provides an explicit answer to the question of whether its incorporation of the rules of FINRA or another organization was integral. The arbitration provision states, in its last sentence, that “[t]he designation of the rules of a United States self-regulatory organization or United States securities exchange is not integral to the underlying agreement to arbitrate.” Other aspects of the arbitration provision confirm this explicit statement; the provision expressly acknowledges that the parties give up their right to sue in court, and sets forth in considerable detail the characteristics of arbitration that differentiate it from judicial proceedings. Moreover, the provision does not limit arbitration to FINRA or any other single forum, but rather authorizes the customer to select any forum of which the broker-dealer is a member. Overall, the arbitration provision leaves no room for doubt that the parties intended for disputes to be resolved by arbitration, not litigation, with the particular forum, and applicable rules, a secondary consideration. Basic principles of contract interpretation, as well as the strong public policy in favor of arbitration under both Massachusetts and federal law, dictate that the Court enforce the agreement of the parties, and compel arbitration. See Starr v. Fordham, 420 Mass. 178, 190 (1995) (court interprets contract in accord with its language to effectuate parties’ intent); Brothers Bldg. Co. of Nantucket, Inc. v. Yankow, 56 Mass.App.Ct. 688 (2002) (public policy favors arbitration); G.L.c. 251, §1; 9 U.S.C. §2 et seq. (2012).
The issue arises whether the arbitration agreement applies to the plaintiffs’ claims against Friel, as well as against Brewer. Friel executed the customer agreement in his capacity as agent for Brewer, but is not named as a party to it. The question, thus, is whether Friel is an intended third-party beneficiary of the agreement. See Miller v. Mooney, 431 Mass. 57, 62 (2000), adopting the Restatement (Second) of Contracts ’ 302 (1984). That depends on the language and circumstances of the contract. Miller, 431 Mass. at 62.
The Customer Agreement between the plaintiffs and Brewer was central to the plaintiffs relationship with Friel, and the services he provided to them; without the agreement, Friel could not have opened and serviced the plaintiffs’ IRA accounts. As discussed supra the contract unequivocally expressed the parties’ intent that “all controversies that may arise” between the parties “concerning any subject matter, issue or circumstance whatsoever” would be arbitrated. Thus, the circumstances of the agreement, as well its broad language, indicate that Friel was an intended beneficiary of the arbitration provision, and weigh strongly in favor of enforcement of that provision with respect to claims against him. See Macaulay v. Norlander, 12 Cal.App.4th 1, 7-8 (1992); Branch v. Sickert, 2011 WL 796783 at *6-7 (both enforcing arbitration provisions between customer and broker-dealer as to claims against individual representative).[5] Massachusetts and federal public policy weigh in the same direction. See Local No. 1710, Int’l Assn. of Fire Fighters, AFL-CIO v. Chicopee, 430 Mass. 417, 421 (1999) (Court should compel arbitration unless it can say with “positive assurance" that the arbitration clause is not susceptible of an interpretation-that covers the asserted dispute). The Court will therefore compel arbitration of all claims against both defendants.
Since arbitration is not available through FINRA, the Court must determine the appropriate forum, pursuant to G.L.c. 251, §3.[6] The agreement gives the customer the choice of forum within a specified range of permissible choices. The Court therefore concludes that the choice belongs to the plaintiffs, provided that the plaintiffs make a commercially reasonable selection. The Court will therefore order that the plaintiffs select an arbitration forum, and so notify the defendants, within ten days of this order. If the defendants object to the selection, the parties may submit the dispute to the Court by an appropriate motion, filed *318 pursuant to Superior Court Rule 9A, within 30 days of this order. If no such motion is received by that date, the Court will order dismissal of the plaintiffs’ claims against Brewer and Friel, without prejudice to arbitration of those claims, and any subsequent application in this Court for confirmation or vacation of an arbitration award.
CONCLUSION AND ORDER
For the reasons stated, the Defendants’ Motion to Dismiss, or in the Alternative to Compel Arbitration, is ALLOWED as to the plaintiffs’ claims against defendants Brewer and Friel.

 The Court is uncertain how this claim differs from negligence and breach of fiduciaiy duty.

 The agreement identifies “me” as the broker-dealer, in this instance, Brewer National Financial Services LLC; “You” as the customer, in this instance, the Bedards: and NFS as National Financial Services, LLC, which provides custody and clearing services for the broker-dealer.

 Defendants do not dispute this factual assertion.

 FINRA’s predecessor, the NASD, had the same rule.

 This case differs markedly from Constantino v. Frechette, 73 Mass.App.Ct. 352, 355-56 (2008), where the Court held that an arbitration agreement between a patient and a nursing home did not apply to claims against individual nurses. The nurses there did not have the central role that Friel had here in obtaining, executing, and implementing the agreement.

 That statute provides: “If the arbitration agreement provides a method of appointment of arbitrators, such method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or if an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint an arbitrator. An arbitrator so appointed shall have all the powers of an arbitrator specifically named in the agreement.”