**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Chicora Life Center, LLC, Appellant,

v.

Fetter Health Care Network, Inc.; NBSC Corporation; and John and Jane Does 1-100, Defendants,

Of which Fetter Health Care Network Inc. is the Respondent.

Appellate Case No. 2019-001322

———————

Appeal From Charleston County
Wade H. Logan, III, Special Referee

———————

Unpublished Opinion No. 2022-UP-354
Submitted June 1, 2022 – Filed September 14, 2022

———————

**AFFIRMED**

———————

John A. Massalon, of Wills Massalon & Allen LLC, of Charleston, for Appellant.

Samuel H. Altman, of Derfner & Altman, LLC, Kevin Roger Eberle, of Charleston School of Law, and Armand G. Derfner, all of Charleston, for Respondent.

———————

**PER CURIAM:** This appeal arises from a failed lease transaction between Chicora Life Center, LC (Chicora), the landlord, and Fetter Health Care Network Inc. (Fetter), the tenant, for rental of a portion of a former naval hospital in North Charleston (the Premises). Chicora sued Fetter after Fetter refused to move into the Premises and pay for certain tenant improvements (the Tenant Improvements); Fetter counterclaimed alleging its obligations under the lease were excused because Chicora failed to satisfactorily complete the Tenant Improvements. A trial was held before a Special Referee, who agreed with Fetter, ruling because Chicora did not make the Tenant Improvements as it promised in the lease, Fetter had no duty to perform. Chicora now appeals. We affirm.

## I.  Standard of Review

Because breach of a lease is an action at law, our scope of review of the Special Referee's factual findings is narrow: we must affirm them if they are supported by any evidence in the record. *Roberts v. Gaskins*, 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct. App. 1997) ("In an action at law, the appellate court will correct any error of law, but it must affirm the special referee's factual findings unless there is no evidence that reasonably supports those findings."); *Middleton v. Eubank*, 388 S.C. 8, 14, 694 S.E.2d 31, 34 (Ct. App. 2010) ("A lease agreement is a contract, and an action to construe a contract is an action at law."). Our scope widens fully when reviewing the Special Referee's rulings interpreting a contract, as that presents a question of law that we assess de novo. *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008) (providing appellate courts "review[] questions of law de novo"); *M & M Group, Inc. v. Holmes*, 379 S.C. 468, 477, 666 S.E.2d 262, 266 (Ct. App. 2008) ("When a contract is clear and unambiguous, the construction of the contract is a question of law for the court." (quoting *Moser v. Gosnell*, 334 S.C. 425, 430, 513 S.E.2d 123, 125 (Ct. App. 1999))).

## II.  Law/Analysis

Fetter, a national health care provider, wanted to lease the Premises for use as a medical clinic. Fetter and Chicora entered a lease agreement in 2014 and later executed several addenda. Section 2 of the lease provided Fetter was to "receive delivery of the Premises after satisfactory completion of the Tenant Improvements by Landlord. All Tenant Improvements contemplated prior to Tenant's occupancy are to be done by and at the expense of the Landlord as described in Exhibit B and subject to the Budget Cap." Exhibit B stated in relevant part that the Tenant Improvements shall be made "in accordance with applicable building codes and craftsmanship standards to the satisfaction of Tenant, Landlord, and City of North

Charleston such that a Certificate of Occupancy will be issued . . . ."  The addenda to the lease changed the parties' duties as to the Tenant Improvements, placing the duty on Chicora to finance and complete the Tenant Improvements and only requiring Fetter to timely pay Chicora back for the costs of the improvements that exceeded the budget cap.  The lease and addenda declare at least seven times that Fetter's obligation to occupy the Premises would arise only when the Tenant Improvements were completed and a certificate of occupancy had been issued.  The parties agreed in section 4 that the lease term would not even begin until both of these conditions had been met.

In early 2016, Chicora received a certificate of occupancy and tendered the Premises to Fetter.  Fetter executives inspected the Premises and found what they described as "a wreck," "a mess," "a disaster," and "Friday the 13th," stating things were "completely unfinished" and noting there were broken walls, unfinished ceilings, broken floors, missing doors, locks not on doors, missing sinks, missing toilets, leaks from the plumbing into exam rooms, a mildew smell, and inoperable elevators.  Believing Chicora had not met its contractual obligation to satisfactorily complete the Tenant Improvements, Fetter refused to move in or pay for the improvements.  Chicora then brought this action.

The Special Referee did not err in finding the lease required Chicora to complete the Tenant Improvements *and* obtain of a certificate of occupancy before delivering the Premises to Fetter, triggering the lease term commencement and Fetter's obligation to pay rent.  This term was plainly and repeatedly stated in the lease and addenda, and we must enforce it. *See S.C. Dep't of Transp. v. M & T Enters. of Mt. Pleasant, LLC*, 379 S.C. 645, 655, 667 S.E.2d 7, 13 (Ct. App. 2008) ("When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary, and popular sense."); *id*. ("Where an agreement is clear and capable of legal construction, the court's only function is to interpret its lawful meaning and the intention of the parties as found within the agreement and give effect to it.").  Likewise, the lease unambiguously provided that, if Chicora did not complete its obligations as to the Tenant Improvements, Fetter had no obligation to move in or pay for the Tenant Improvements.

If the Tenant Improvements would automatically be considered complete when a certificate of occupancy was issued, then the parties would have had no need to list both the completion of the Tenant Improvements and the issuance of a certificate of occupancy as two separate requirements that together triggered the commencement of the lease. *See Buice v. WMA Sec., Inc.*, 380 S.C. 149, 157, 668 S.E.2d 430, 434 (Ct. App. 2008) ("[I]n determining the intent of the contracting parties, the court

should construe the contract as a whole, and read together different provisions dealing with the same subject matter."); 11 Williston on Contracts § 32:5 (4th ed.) (providing an "interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable." (quoting *HDI-Gerling America Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662 (11th Cir. 2012))).

According to Chicora, nothing in the lease permitted Fetter to terminate or cancel the lease. Rather, Fetter's sole remedy was damages, as Fetter was responsible for paying for any Tenant Improvements over the budget cap. Chicora anchors its argument on the language of "Exhibit B," which provides any Tenant Improvements exceeding the budget cap "shall be the sole responsibility of and paid for by the Tenant." As Chicora points out, Section 3 of the lease states: "In the event Tenant does not occupy the space designated herein, all interior finishing costs become due and payable upon billing by Landlord." But that is not all Section 3 says. The rest of the section states: "provided however, that if Tenant's failure to occupy the Premises is due to Landlord's failure to complete improvements or to perform any other obligation set forth herein, then Tenant's obligation to pay interior finishing costs pursuant to this Section 3 shall be excused or waived."

We hold the rational reading of Section 3 is that if Fetter did not move in after Chicora satisfactorily made the Tenant Improvements, Fetter was on the hook for the improvements. But if the reason Fetter did not move in was because Chicora did not complete the Tenant Improvements, then Fetter was off the hook.

Chicora also claims Fetter breached the Third Addendum of the lease by not paying for the Tenant Improvements over the budget cap when the Premises were tendered. According to Chicora, because Fetter breached the Lease first, Fetter had no right to refuse to occupy the Premises. We are not persuaded by Chicora's argument. Nothing in the Lease gave Chicora the right to make improvements unsatisfactory to Fetter, force Fetter to still move in, and restrict Fetter's remedy to a claim for damages. Instead, we agree with the Special Referee's careful and thorough order, which went straight to the real issue: whether Chicora complied with its contractual obligation to provide satisfactory improvements. The Special Referee interpreted the provisions regarding the satisfactory completion of the Tenant Improvements as a condition of Fetter's obligation to move in. His reading of the contract was correct as a matter of law. *McGill v. Moore*, 381 S.C. 179, 187, 672 S.E.2d 571, 575 (2009) ("If a contract contains a condition precedent, that condition must either occur or be excused before a party's duty to perform arises.").

Chicora next maintains that, in Section 10 of the lease, Fetter waived all rights "to vacate the Premises as provided by law." There are several reasons why this argument cannot prevail. Chief among them is that a party does not need the right to vacate a space it never occupied and had no legal obligation to occupy.

Finally, Chicora claims because Fetter did not give it written notice of the unsatisfactory improvements at the time of delivery as required by Section 10, Fetter is deemed to have accepted the Premises "as being in the condition in which Landlord is obligated to deliver the Premises." The Special Referee never ruled on this argument, and from the record we have been presented, it does not appear to have been raised in the motion for reconsideration. Therefore, this argument is not preserved for our review. *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). As an appellate court, we are "a court of review, not of first view." *Cutter v. Wilkinson*, 544 U.S. 709, 718, n.7 (2005).

Having decided the contract obligated Chicora to provide satisfactory Tenant Improvements before the lease term commenced and Fetter's duty to perform arose, we consider whether the Special Referee's factual findings that Chicora breached its obligation are supported by the evidence. We conclude they are amply supported, and therefore, we affirm the well-reasoned ruling of the Special Referee.

**AFFIRMED.**[1]

**GEATHERS and HILL, JJ., and LOCKEMY, A.J., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.