In re HAWTHORNE TOWNHOMES, L.P., Metro Townhomes and Homes, Inc., Tom Sakser and Blane Ladymon, Relators

Hawthorne Townhomes, L.P., Metro Townhomes and Homes, Inc., Tom Sakser and Blane Ladymon, Appellants

v.

Scott Branch, Appellee.

No. 05-08-01050-CV.

Court of Appeals of Texas, Dallas.

Feb. 27, 2009.

Greg C. Noschese, Jerrod L. Allen, Lea N. Clinton, Munsch, Hardt, Kopf & Harr, P.C., Devan D. Sharp, Dallas, for Appellants.

Richard B. Phillips, Jr., Thompson & Knight L.L.P., Patrick William Powers, Cash Klemchuk Powers Taylor LLP, Dallas, for Appellee.

Before Justices FRANCIS, LANG-MIERS, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

Hawthorne Townhomes, L.P., Metro Townhomes & Homes, Inc., Tom Sakser, and Blane Ladymon bring this interlocutory appeal and petition for writ of mandamus from the trial court's order denying their motion to compel arbitration. We conditionally grant the petition for writ of mandamus as to Metro Townhomes & Homes, Inc., Sakser, and Ladymon, and we deny it as to Hawthorne Townhomes, L.P. We dismiss the interlocutory appeal.

## BACKGROUND

In August 2005, Scott Branch entered into a contract to purchase a new house from "Metro Townhomes/Hawthorne Townhomes, LP" for $627,500. Ladymon signed the contract on behalf of the seller. The sale closed in February 2006 after construction was completed. The deed Branch received at closing showed the seller of the property was Hawthorne Townhomes, L.P. Included in the documents signed at closing was a limited warranty agreement containing an arbitration clause.

According to Branch's pleadings, after the closing, he took possession of the home and found one to two inches of standing water in it from the rain earlier that day. He discovered the house suffered water damage every time it rained. On February 6, 2008, after the builder's attempts to repair the problems were unsuccessful, Branch filed this lawsuit. Branch sued under the Texas Deceptive Trade Practices–Consumer Protection Act for various laundry-list violations, unconscionable actions, and breaches of express and statutory warranties. His causes of actions against defendants also included negligent misrepresentation, negligence, negligence per se, statutory and common-law fraud, breach of contract, and promissory estoppel.[1]

---

1. Branch also sued the appraiser and the real estate agent; however, those claims are not relevant to this case.

On May 15, 2008, defendants filed a motion to dismiss and, alternatively, to abate and compel arbitration. The motion to dismiss asserted that, under the Texas Residential Construction Commission Act, Branch had to present his construction-defect claim to the Texas Residential Construction Commission before he could bring suit for damages. *See* TEX. PROP. CODE ANN. § 426.005(a) (Vernon Supp. 2008). Branch did present a claim to the Texas Residential Construction Commission, but the commission dismissed the claim for not being timely filed. Defendants asserted Branch's failure to bring a timely claim before the Texas Residential Construction Commission barred his suit. The motion to abate and compel arbitration asserted the limited warranty agreement contained an arbitration clause applicable to Branch's causes of action against them. Defendants requested that the suit be abated for the parties to pursue binding arbitration as provided in the limited warranty agreement.

On July 17, 2008, the trial court held a hearing on the motion to dismiss and, alternatively, to abate and compel arbitration, and the court denied both the dismissal and the abatement and arbitration. Defendants filed a notice of interlocutory appeal of the denial of arbitration under the Texas Arbitration Act and a petition for writ of mandamus challenging the denial of arbitration under the Federal Arbitration Act.[2]

## ARBITRATION

In the trial court, Branch opposed abatement and arbitration because (a) the limited warranty agreement containing the arbitration provision was not a valid contract, (b) his causes of action were not within the scope of the arbitration clause, and (c) defendants waived arbitration by filing the motion to dismiss and engaging in discovery.

## The Arbitration Agreement

On the first page of the limited warranty agreement, the "BUILDER" was identified as "Metro Townhomes." The agreement stated, "the words WE, US, or OUR refer to the BUILDER," and "the words YOU and YOUR refer to the PURCHASER." Paragraph 17 set out the scope of the arbitration agreement, and it stated,

17. Any disputes between YOU and US, or parties acting on OUR behalf, related to or arising from this AGREEMENT, the design or construction of the HOME or the COMMON ELEMENTS or the sale of this HOME or transfer of to [sic] the COMMON ELEMENTS will be resolved by binding arbitration. Binding arbitration shall be sole remedy for resolving any and all disputes between YOU and US, or OUR representatives, employees, subcontractors, independent contractors, or agents. Disputes subject to binding arbitration include, but are not limited to,

1. Any disagreement or dispute regarding whether a condition in the HOME or the COMMON ELEMENTS is a CONSTRUCTION DEFECT and is therefore covered by this AGREEMENT;

2. Any disagreement or dispute as to whether a CONSTRUCTION DEFECT has been corrected in compliance with this AGREEMENT;

3. Any alleged breach of this AGREEMENT;

2. The motion to dismiss is not before us, and we make no holding regarding the order denying it.

4. Any alleged violation of consumer protection, unfair trade practice, or any other statute;

5. Any allegation of negligence, strict liability, fraud, and/or breach of duty of good faith, and any other claims arising in equity or from common law;

6. Any dispute concerning the issues that should be submitted to binding arbitration[;]

7. Any dispute concerning the time-lines [sic] of OUR performance and/or PURCHASER'S notifications under this AGREEMENT;

8. Any dispute as to the payment or reimbursement of the arbitration filing fee;

9. Any dispute as to whether this AGREEMENT, or any provision hereof, including, but not limited to any waiver hereunder, is unenforceable;

10. Any other claim arising out of or relating to the sale, design or construction of PURCHASER'S HOME or to the COMMON ELEMENTS, including, but not limited to any claim arising out of, relating to or based upon any implied warranty or claim for negligence or strict liability not effectively waived by this AGREEMENT.

\* \* \*

19. This arbitration agreement shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1–16) to the exclusion of any inconsistent state law, regulation or judicial decision. The award of the arbitrator shall be final and binding and may be entered as a judgment in any court of competent jurisdiction.

The signature block at the end of the limited warranty agreement identified "BUILDER" as

METRO TOWNHOMES & HOMES, LLP

A Texas Limited Liability Partnership

and was signed by Ladymon. Branch signed the agreement as "PURCHASER."

### Jurisdiction

 A denial of arbitration under the Texas Arbitration Act may be appealed through an interlocutory appeal. Tex. Civ. Prac. & Rem.Code Ann. § 171.098(a) (Vernon 2005). The denial of arbitration under the Federal Arbitration Act cannot be appealed. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992). When the trial court abuses its discretion in denying a motion to compel arbitration under the Federal Arbitration Act, the movant has no adequate remedy on appeal, so the order may be reviewed on a petition for writ of mandamus. *Id.* at 272–73. In this case, the parties agreed in paragraph 19 of the limited warranty agreement that arbitration would be governed by the Federal Arbitration Act.[3] Accordingly, we consider defendants' petition for writ of mandamus and dismiss their interlocutory appeal.

### Validity of the Arbitration Agreement

 Generally, arbitration of a claim cannot be compelled unless it falls within the scope of a valid arbitration agreement. *In re Advance Payroll Funding, Ltd.,* 254 S.W.3d 710, 713 (Tex.App.-Dallas 2008, orig. proceeding). The parties' dispute concerns whether the signing party, Metro Townhomes & Homes L.L.P., was a legal

**3.** Before this Court, Branch refused to concede that the Federal Arbitration Act applied. However, in his amended response to defendants' motion to dismiss and compel arbitration, Branch stated, "The arbitration provision at issue, by its terms, is exclusively governed by the Federal Arbitration Act."

entity having the capacity to contract and, if so, whether Metro Townhomes & Homes, Inc. can enforce the contract.

 The party attempting to compel arbitration has the burden of establishing the existence of a valid arbitration agreement. The trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003). If the trial court determines the arbitration agreement is valid, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *Id.* Arbitration agreements are interpreted under traditional contract principles. *Id.* The party seeking to compel arbitration must show the agreement meets all the required contractual elements. *Id.* at 228.

 Branch asserts that at the time of the closing in February 2006, Metro Townhomes & Homes L.L.P. did not exist. The formation of a contract requires a meeting of the minds on the contract's essential terms. *Loeffler v. Lyttle Indep. Sch. Dist.*, 211 S.W.3d 331, 346 (Tex.App.-San Antonio 2006, pet. denied). If one of the parties does not exist, no contract can be formed. *See WesternGeco, L.L.C. v. Input/Output, Inc.*, 246 S.W.3d 776, 786 (Tex.App.-Houston [14th Dist.] 2008, no pet.) ("a nonexistent entity cannot enter into a contract."). Thus, Branch argues, because Metro Townhomes & Homes, L.L.P. did not exist at the time it purportedly executed the limited warranty agreement, there was no meeting of the minds, and the limited warranty agreement with its arbitration provisions never became a valid contract. Defendants argue that before the February 2006 closing, Metro Townhomes & Homes L.L.P. was converted into Metro Townhomes, L.P. and that

the original entity continued to exist through the conversion.

Defendants presented records filed with the Texas Secretary of State regarding the relevant entities. These documents show that Metro Townhomes & Homes, Inc. was first incorporated on February 8, 2000. On May 24, 2000, Metro Townhomes & Homes, L.L.P. registered as a limited liability partnership with Metro Townhomes & Homes, Inc. as its general partner. Metro Townhomes & Homes, L.L.P. renewed the registration annually until July 2004. On July 5, 2004, Metro Townhomes & Homes, L.L.P. withdrew its registration as a limited liability partnership. That same day, Metro Townhomes, L.P. was registered as a limited partnership with Metro Townhomes & Homes, Inc. as its general partner. The certificate of limited partnership stated the partnership was converting from a Texas general partnership, Metro Townhomes & Homes, L.L.P., into the limited partnership, Metro Townhomes, L.P.

Branch argues that, on July 5, 2004, when Metro Townhomes & Homes, L.L.P. withdrew its registration, it ceased to exist and, therefore, could not sign the limited warranty agreement in February 2006. We disagree. The Texas Revised Partnership Act governs the conversion of partnerships. Section 9.05(h)(1) provides, "When a conversion of a converting entity takes effect: (1) the converting entity shall continue to exist, without interruption, but in the organizational form of the converted entity rather than in its prior organizational form." TEX.REV.CIV. STAT. ANN. art. 6132b–9.05(h)(1) (Vernon Supp.2008). Thus, contrary to Branch's assertions, Metro Townhomes & Homes, L.L.P. did not cease to exist when it withdrew its registration as a limited liability partnership. Paragraph 26 of the limited warranty agreement stated the agreement "and the

binding arbitration process are binding on PURCHASER and US. It is also binding on PURCHASER'S and BUILDER'S heirs, executors, administrators, successors, and assigns." Metro Townhomes, L.P. was the successor of Metro Townhomes & Homes, L.L.P. and, therefore, was bound by the arbitration provision.

We conclude defendants established the existence of a valid arbitration agreement.

## Scope of the Arbitration Agreement

Having found a valid arbitration agreement exists, we next consider which defendants may enforce the arbitration agreement and whether the agreement encompasses Branch's causes of action. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex.2006) (orig.proceeding); *In re Advance Payroll Funding, Ltd.*, 254 S.W.3d at 713.

▉ The arbitration agreement applies to disputes between Branch and Metro Townhomes & Homes L.L.P. and between Branch and the partnership's "representatives, employees, subcontractors, independent contractors, or agents." Metro Townhomes & Homes, Inc., as the general partner of both Metro Townhomes partnerships, was their agent. *See* TEX.REV. CIV. STAT. ANN. art. 6132b–3.02(a) ("Each partner is an agent of the partnership for the purpose of its business."); *id.* art. 6132a–1, § 4.03(a) ("[A] general partner of a limited partnership has the rights and powers and is subject to the restrictions of a partner in a partnership without limited partners."). Thus, Metro Townhomes & Homes, Inc., was an intended third-party beneficiary of the arbitration agreement and was entitled to enforce the arbitration agreement. *See In re NEXT Fin. Group, Inc.*, 271 S.W.3d 263, 267 (Tex.2008) (orig.proceeding). Branch alleged Sakser and Ladymon were agents of "Metro," and he alleged that Ladymon was president of

Metro Townhomes & Homes, Inc. Branch's allegations against Sakser and Ladymon concern their actions in the course and scope of their agency with Metro Townhomes & Homes, Inc. as general partner of the Metro partnerships. Therefore, as agents of the partnerships' general partner, Sakser and Ladymon were also entitled to enforce the arbitration agreement. *See In re Merrill Lynch Trust Co. F.S.B.*, 235 S.W.3d 185, 188–89 (Tex.2007) (orig.proceeding).

▉ Furthermore, Branch may not avoid enforcement of the arbitration agreement by suing the signatory's general partner and its agents instead of suing the signatory directly. As the supreme court stated, "parties to an arbitration agreement may not evade arbitration through artful pleading, such as by naming individual agents of the party to the arbitration clause and suing them in their individual capacity." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d at 188 (quoting *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1318 (11th Cir.2002)). Branch's claims against Sakser and Ladymon arise from and relate to the design or construction of the home and the sale of the home, all of which are subject to arbitration under the arbitration provision of the limited warranty agreement. Branch's artful pleading in this case cannot avoid application of the arbitration agreement by Metro Townhomes & Homes, Inc., Sakser, and Ladymon.

▉ Next, we consider Hawthorne Townhomes, L.P.'s right to enforce the arbitration agreement. In their motion to dismiss or abate and compel arbitration, defendants asserted "Plaintiff, Metro, and Hawthorne agreed to arbitrate any dispute between Plaintiff, Metro, and Hawthorne. . . ." However, Hawthorne Townhomes, L.P. was the seller of the house

and not the builder, it was not a signatory to the limited warranty agreement containing the arbitration provision, and nothing in the record indicates it was one of the Metro partnerships' "representatives, employees, subcontractors, independent contractors, or agents," who were subject to the arbitration agreement. The limited warranty agreement also stated it was independent of the contract for the sale of the home.

 In this Court, defendants assert the doctrine of equitable estoppel allows Hawthorne Townhomes, L.P., as a nonsignatory of the agreement, to compel arbitration. They argue equitable estoppel permits a nonsignatory to compel arbitration when the signatory raises allegations of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *MS. Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)); *Meyer v. WMCO–GP*, 211 S.W.3d 302, 306 (Tex.2006) (citing *Grigson*). However, Hawthorne Townhomes, L.P., did not present this ground for arbitration to the trial court. Arguments not presented to the trial court will not be considered in a petition for mandamus. *See In re Advance Payroll Funding, Ltd.*, 254 S.W.3d at 714.

We conclude Metro Townhomes & Homes, Inc., Ladymon, and Sakser established that they are entitled to enforce the arbitration provision of the limited warranty agreement. However, Hawthorne Townhomes, L.P. did not.

 We next consider whether Branch's claims are within the scope of the arbitration agreement. Branch argues his causes of action do not fall within the categories of claims subject to arbitration because none of the claims are based on the limited warranty agreement but are based on the sales contract, the Texas Deceptive Trade Practices–Consumer Protection Act, statutory fraud, the statutory warranty in Texas Property Code section 430.001, and various common-law causes of action. However, the arbitration provision states that it applies to disputes concerning the sale of the home, "[a]ny alleged violation of consumer protection, unfair trade practice, or any other statute;" and "[a]ny allegation of negligence, strict liability, fraud, and/or breach of duty of good faith, and any other claims arising in equity or from common law." These provisions encompass all of Branch's causes of action against defendants. We conclude that all of Branch's claims against defendants are subject to the arbitration provision of the limited warranty agreement.

**Waiver of Arbitration Agreement**

 Branch also asserts that defendants waived their right to enforce the arbitration provision by engaging in discovery and by filing a motion to dismiss. "A party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment." *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex.2008), *cert. denied*, 129 S.Ct. 952 (2009); *In re Citigroup Global Mkts., Inc.*, 258 S.W.3d 623, 625 (Tex.2008) (orig.proceeding) (per curiam) (quoting *Perry Homes*). Waiver is a question of law based on the totality of the circumstances. The test for waiver is whether the party moving for arbitration "has substantially invoked the judicial process to an opponent's detriment, the latter term meaning inherent unfairness caused by 'a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *In re Citigroup Global Mkts., Inc.*, 258 S.W.3d at 625 (quoting *Perry Homes*, 258 S.W.3d at 597). There

is a strong presumption against waiver, but that presumption may be rebutted. *Perry Homes,* 258 S.W.3d at 584.

 In determining whether a party waived an arbitration clause, the courts consider a variety of factors, including:

whether the movant for arbitration was the plaintiff (who chose to file in court) or the defendant (who merely responded);

when the movant learned of the arbitration clause and how long the movant delayed before seeking arbitration;

the amount of pretrial activity related to the merits rather than arbitrability or jurisdiction;

the amount of time and expense incurred in litigation;

whether the movant sought or opposed arbitration earlier in the case;

whether the movant filed affirmative claims or dispositive motions;

the amount of discovery conducted, which party initiated the discovery, whether the discovery related to the merits, the arbitrability of the case, or standing, and how much of the discovery would be useful in arbitration; and

whether the movant sought judgment on the merits.

*See Perry Homes,* 258 S.W.3d at 591–92. "Merely taking part in litigation is not enough unless a party 'has substantially invoked the judicial process to its opponent's detriment.'" *In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 763 (Tex. 2006) (orig.proceeding) (quoting *In re Serv. Corp. Int'l,* 85 S.W.3d 171, 174 (Tex. 2002) (orig.proceeding)).

 The record shows defendants moved for arbitration on May 15, 2008, ninety-nine days after suit was filed on February 6, 2008, and seventy-three days after defendants filed their original answers on March 3, 2008. Branch asserts defendants waived the arbitration clause because "they engaged in substantial discovery and invoked the judicial process by seeking dismissal of Branch's suit," which prejudiced Branch. Branch's counsel submitted an affidavit stating defendants responded to eight sets of discovery, conducted on-site inspections, which included testing of Branch's home, and signed Rule 11 agreements. Attached to the affidavit was a list of the pleadings and discovery in the case. That list shows Branch served a request for disclosure on each defendant on March 4, 2008, which they answered on April 4, 2008. Branch served a request for production and a set of interrogatories on each defendant on March 13, 2008. The parties signed Rule 11 agreements on March 31, April 7, and April 11, 2008, but the record does not show the subject of those agreements. On May 15, 2008, defendants filed their objections and responses to the request for production and interrogatories and that same day filed their motion to dismiss or to abate and compel arbitration. On June 8, 2008, defendants produced about 5500 pages of documents.

During the seventy-three days between defendants' answering and filing the motion to compel arbitration, defendants simply responded to Branch. They did not request any discovery. Had they not responded to Branch's petition, they would have faced a default judgment, and if they had not responded to the discovery requests, they would have faced sanctions. *See* Tex.R. Civ. P. 215.1, 239. The supreme court has held a party does not waive arbitration by seeking limited discovery. *See Perry Homes,* 258 S.W.3d at 590 (citing *In re Vesta Ins. Group, Inc.,* 192 S.W.3d at 763; *In re Bruce Terminix Co.,* 988 S.W.2d 702, 704–05 (Tex.1998) (orig.proceeding); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex.1996)). We conclude defendants did not waive ar-

bitration by responding to Branch's discovery demands.

Branch also argues defendants waived the arbitration clause by moving to dismiss the claims because Branch did not timely file a claim with the Texas Residential Construction Commission. The supreme court has held that a motion to dismiss for lack of standing does not sufficiently invoke the judicial process to overcome the strong presumption against waiver. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d at 764. Likewise, we conclude that defendants' moving for dismissal due to Branch's alleged failure to exhaust administrative remedies did not waive the arbitration provision.

Branch asserts he was prejudiced because (a) he spent substantial time, money, and effort on discovery and on responding to defendants' motion to dismiss; (b) defendants obtained the benefit of an onsite inspection and testing of Branch's property through the discovery process; and (c) moving the litigation to arbitration will mean Branch's efforts in court were wasted. We disagree that Branch has demonstrated prejudice. First, a party's efforts in requesting and obtaining discovery are not prejudicial. *See Perry Homes*, 258 S.W.3d at 600 ("[A] party who *requests* lots of discovery is not prejudiced by getting it and taking it to arbitration in the same way that a party who *produces* lots of discovery outside the stricter discovery limits in arbitration."). As for the effort of responding to the motion to dismiss, Branch made no showing that he would not be subject to that motion if the case had gone immediately to arbitration. Likewise, Branch made no showing that he opposed defendants' inspecting the home and testing the property, and he has not shown defendants would not have been entitled to inspect the home or test the property in an arbitration proceeding. Nor has Branch shown that his efforts in court would be wasted if the litigation is moved to arbitration. We conclude Branch made no showing of prejudice.

The supreme court has found waiver of arbitration in only one case, *Perry Homes v. Cull.* In that case, the plaintiffs initially "vigorously opposed" the defendants' motion for arbitration, the parties conducted nearly complete discovery, and the case was set for trial. *Perry Homes*, 258 S.W.3d at 585. Then, after fourteen months of litigation, the plaintiffs changed their minds and moved for arbitration. The trial court granted the motion four days before the date the case was set for trial. *Id.* The supreme court held the arbitration was waived, set aside the arbitration award, and remanded the case "for a prompt trial." *Id.* at 601. In this case, defendants never opposed arbitration, and they moved for arbitration seventy-three days after they answered. They conducted no formal discovery of their own. The record does not show the case was set for trial when defendants moved to compel arbitration. We conclude *Perry Homes* is distinguishable.

After considering the totality of the circumstances, we conclude defendants did not substantially invoke the judicial process to Branch's detriment. Accordingly, defendants did not waive the arbitration provision.

## CONCLUSION

We hold the trial court did not abuse its discretion in denying the motion to abate and compel arbitration as to Hawthorne Townhomes, L.P. We hold the trial court abused its discretion in denying Metro Townhomes & Homes, Inc., Sakser, and Ladymon's motion to abate and compel arbitration. We conditionally grant the petition for writ of mandamus as to Metro

Townhomes & Homes, Inc., Sakser, and Ladymon, and we direct the trial court to (1) vacate its order denying Metro Townhomes & Homes, Inc., Sakser, and Ladymon's motion to abate and compel arbitration and (2) grant Metro Townhomes & Homes, Inc., Sakser, and Ladymon's motion to abate and compel arbitration. The writ will issue only if the trial court fails to comply.

We dismiss the interlocutory appeal. *See In re D. Wilson Constr. Co.,* 196 S.W.3d at 784; *In re Sands Bros. & Co.,* 206 S.W.3d 127, 133 (Tex.App.-Dallas 2006, orig. proceeding).