Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-08-00923-CV

Paul **MONTOYA** and Levin & Hoffmann, LLP,
Appellants

v.

Clint M. **GLENNY**, II,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-10535
Honorable Karen H. Pozza, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Sandee Bryan Marion, Justice
            Rebecca Simmons, Justice
            Marialyn Barnard, Justice

Delivered and Filed:  December 23, 2009

REVERSED AND REMANDED

This case stems from an attorneys' fee dispute between Appellant Paul Montoya's original attorney, Appellee Clint M. Glenny, II, and subsequently hired counsel, Appellant Levin & Hoffman, L.L.P. (Levin) following the settlement of a personal injury claim. Based solely on correspondence between the attorneys, the trial court granted Glenny's motion to compel binding arbitration. After a hearing, the arbitrator granted attorneys' fees of forty percent of the Montoya settlement to Glenny. On appeal, Levin argues the trial court erred in: (1) granting the motion to

compel; and (2) failing to enter judgment in favor of Levin. Because the evidence does not support a meeting of the minds based on either the original two letters, or the subsequent correspondence, the trial court erred in granting the motion to compel arbitration. We, therefore, reverse the order of the trial court and remand this cause for further proceedings consistent with this opinion.

### FACTUAL BACKGROUND

Appellant Montoya was injured in an automobile accident in March of 2006. Four days after the accident, Montoya signed a contingent fee contract with Glenny. According to Montoya, by June of 2007, fifteen months after he contracted with Glenny, Montoya was frustrated with the lack of activity on his case and terminated his agreement with Glenny. Montoya subsequently hired attorney Rebecca Holt with Levin & Hoffmann, L.L.P. in July of 2007. Shortly thereafter, Levin initiated a lawsuit on Montoya's behalf, exchanged discovery, and participated in depositions. In May of 2008, Levin obtained a settlement for Montoya in the amount of $200,000.00.

In June of 2008, Levin notified Glenny of Montoya's settlement and attempted to resolve the matter of costs and attorneys' fees. In his initial letter, Levin requested Glenny submit an invoice for time and expenses, along with a demand for reasonable attorneys' fees. Levin also suggested a specific arbitrator assist in the arbitration of the attorneys' fees.

In response, Glenny claimed costs of $699.49 (this amount was later reduced to $99.49) and further demanded the entire forty percent attorneys' fees under the contract. Glenny argued that he was discharged without cause based on his refusal to advance a loan to Montoya. Additionally, Glenny stated that he was prepared to file a declaratory judgment in Bexar County

to secure payment of fees, but that he would agree to a ***binding*** arbitration with the named

arbitrator "***if the same could be completed within the following three weeks***." (emphasis added)

## A. Correspondence Between Glenny and Levin

Over the next month, the parties exchanged a plethora of correspondence in an attempt to

resolve their differences. A brief summary of the exchange follows:

| | | |
|---|---|---|
| 6/11/08 | Levin to Glenny | case settled, agrees to place funds in trust; recommends attorney as arbitrator |
| 6/18/08 | Glenny to Levin | demands 40% of gross settlement; prepared to file declaratory judgment action in Bexar County; will agree to named attorney conducting binding arbitration, ***if it can be completed within 3 weeks*** (emphasis added) |
| 6/19/08 | Levin to Glenny | if Glenny feels the need to file declaratory judgment action, then proceed with action |
| 6/19/08 | Glenny to Levin | inquired whether Levin will arbitrate with named attorney otherwise Glenny will file declaratory judgment action |
| 6/19/08 | Glenny to Levin | suggesting 3 individuals as potential arbitrators |
| 6/20/08 | Levin to Glenny | withdrawing named attorney as possible arbitrator and requesting suggestions from Glenny |
| 6/25/08 | Levin to Glenny | agree to the second named attorney for ***nonbinding*** arbitration (emphasis added) |
| 7/1/08 | Glenny to Levin | inquiring whether Levin would rather arbitrate or file breach of contract action seeking declaratory relief |
| 7/1/08 | Glenny to Levin | if unable to resolve issue, he will file suit against Montoya for breach of contract |
| 7/2/08 | Glenny to Levin | monies will be placed in a trust pending the outcome of breach of contract and |

| | | |
|---|---|---|
| | | declaratory judgment action to be filed; or can arbitrate matter |
| 7/3/08 | Glenny to Levin | "[Y]*ou have not indicated as to if you are amenable to a binding arbitration to resolve this matter.* Please contact me to discuss this further." (emphasis added) |

## PROCEDURAL BACKGROUND

On July 3, 2008, Levin filed suit in Bexar County District Court for the attorneys' fees in question. Approximately two weeks later, Glenny filed a motion to compel arbitration. Glenny attached the first two letters exchanged between himself and Levin as proof of an arbitration agreement. In his response, Levin attached seven additional letters discussing payment, potential arbitrators, and possible litigation to resolve the dispute. During the August 15, 2008 hearing on the motion to compel arbitration, Levin argued Glenny's last letter, dated July 3, 2009, that noted that Levin had not indicated whether he was amenable to binding arbitration, conclusively established that the parties had not agreed to arbitration. The trial court granted the motion to compel arbitration.

The parties held a one-day arbitration on the merits. In his award, the arbitrator made specific findings of fact with regard to: a viable attorney/client agreement; Glenny's handling of Montoya's case; communications between Glenny and Montoya; whether Montoya terminated Glenny for good cause; whether Levin wrongfully solicited Montoya or tortiously interfered with the relationship between Glenny and Montoya; and declaratory relief that Glenny collect forty percent of the settlement as attorneys' fees and additional attorneys' fees in the amount of $38,065.02 (plus additional if appealed). The arbitrator also provided that Glenny take nothing on all additional claims and appellants take nothing on all claims. The trial court denied the appellants' motion to vacate the arbitration award and this appeal followed.

**MOTION TO COMPEL ARBITRATION**

On appeal, Levin disputes Glenny's assertion that the first two letters establish the parties' agreement to settle their dispute through arbitration. Specifically, Levin asserts there is no evidence that there was a meeting of the minds; and, therefore, the trial court erred in compelling the parties to arbitration. Although courts generally enforce arbitration agreements, a court may not order arbitration in the absence of such an agreement. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994). The parties' agreement to arbitrate must be clear. *Id.*; *see also In re Premont Indep. Sch. Dist.*, 225 S.W.3d 329, 333 (Tex. App.—San Antonio 2007, orig. proceeding); *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 835 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

**A. Standard of Review**

Whether there is an enforceable agreement to arbitrate is a question of law and is, therefore, reviewed de novo. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 388 (Tex. App.—Houston [14th Dist.] 1998, pet. dism'd w.o.j.). Although the appellate courts have repeatedly expressed a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson*, 128 S.W.3d at 227; *see also In re Rolland*, 96 S.W.3d 339, 345 (Tex. App.—Austin 2001, orig. proceeding) ("[N]o presumption of arbitrability arises unless the trial court finds an enforceable arbitration agreement."); *In re Jebbia*, 26 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). Simply put, no presumption of favoring arbitration arises absent a court finding of the existence of an enforceable arbitration agreement. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992).

## B. Evidentiary Hearing

In the present case, the trial court held a contested hearing. The initial issue was whether the parties agreed to arbitrate the attorney's fee dispute. *See Id.*, 842 S.W.2d at 269; *see also Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 246 (Tex. App.—San Antonio 2006, orig. proceeding). Accordingly, Glenny, the party alleging an arbitration agreement, was required to present complete summary proof in his "case-in-chief" that there was an agreement to arbitrate that required arbitration of the dispute. *Nabors Drilling USA*, 198 S.W.3d at 246; *see also In re Koch Indus., Inc.*, 49 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, orig. proceeding) ("The party seeking arbitration has the initial burden to present evidence of an arbitration agreement."); *In re Jebbia,* 26 S.W.3d at 757. If Glenny satisfied his burden, the trial court was required to order the parties to arbitration and order a stay of the proceedings. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021 (Vernon 2005). To prevent the trial court from summarily sending the parties to arbitration, Levin was required "only to raise an issue of material fact about a necessary element of [his] opponent's "case in chief" or present some evidence supporting every element of a defensive claim that there is no enforceable agreement to arbitrate." *In re Jebbia,* 26 S.W.3d at 757.

## C. Requirement for a Valid Arbitration Agreement

### 1. Necessary Proof

Although an arbitration agreement need not assume any particular form, the language of the agreement must clearly indicate an intent to arbitrate. *Wachovia Sec., L.L.C. v. Emery*, 186 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see also Coker v. Coker*, 650 S.W.2d 391, 393-94 (Tex. 1983). A party seeking to compel arbitration must (1) establish the existence of a valid arbitration agreement, and (2) show that the claims asserted are within the

scope of the agreement. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005) (per curiam); *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex. 2005). In doing so, courts must examine the entire writing as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *J.M. Davidson*, 128 S.W.3d at 229.

Because Glenny sought to compel arbitration, it was his burden to prove the existence of the arbitration agreement. *See Am. Med. Tech., Inc. v. Miller*, 149 S.W.3d 265, 270 (Tex. App.—Houston [14th Dist.] 2004, no pet., combined appeal & orig. proceeding) (burden to show existence of valid arbitration agreement on party seeking to compel arbitration); *In re Koch Indus.,* 49 S.W.3d at 444 ("The party seeking arbitration has the initial burden to present evidence of an arbitration agreement.").

### 2. *Law of Contracts*

Although public policy favors the submission of disputes to arbitration, arbitration is a creature of contract, and is reviewed using contract principles. *J.M. Davidson*, 128 S.W.3d at 227. The parties' agreement and intent to submit to arbitration must be unambiguous. *Id*.; *Porter & Clements, L.L.P. v. Stone,* 935 S.W.2d 217, 220 (Tex. App.—Houston [1st Dist.] 1996, orig. proceeding). As such, an appellate court must ascertain the intent of the parties as expressed in the instrument. *J.M. Davidson*, 128 S.W.3d at 229. There is no particular form or language required for a valid arbitration agreement, but it must reflect the parties' intent to submit their dispute to arbitrators and to be bound by that decision. *Porter & Clements*, 935 S.W.2d at 220; *Manes v. Dallas Baptist Coll.*, 638 S.W.2d 143, 145 (Tex. App.—Dallas 1982, writ ref'd n.r.e.). Thus, the formation of a valid arbitration agreement requires: "(1) an offer; (2) an acceptance in compliance with the terms of the offer; (3) a meeting of the minds; (4) each

party's consent to the terms; and (5) execution of the contract with the intent that it be mutual and binding." *AXA Fin., Inc. v. Roberts*, No. 03-07-00079-CV, 2007 WL 2403210, *6 (Tex. App.—Austin Aug. 23, 2007, no pet.) (citing *McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W.2d 473, 477 (Tex. App.—El Paso 1993, no writ)). Key to this case, the formation of the contract, requires a meeting of the minds on the contract's essential terms. *Xtria L.L.C. v. Int'l. Ins. Alliance Inc.*, 286 S.W.3d 583, 596 (Tex. App.—Texarkana 2009, pet. denied); *see also In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131, 138 (Tex. App.—Dallas 2009, orig. proceeding) (citing *Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 346 (Tex. App.—San Antonio 2006, pet. denied)).

### 3. Analysis

Levin argues Glenny attached only two out of almost twenty letters of correspondence as exhibits to his motion to compel. Glenny counters that based on his filing, the burden shifted to Levin to establish that no agreement to arbitrate existed. Glenny's argument relies on *Nabors Drilling USA*, 198 S.W.3d at 246-47, and *In re Conseco Finance Servicing Corp.*, 19 S.W.3d 562, 569 (Tex. App.—Waco 2000, orig. proceeding), for the proposition that simply attaching a copy of the arbitration agreement is sufficient. However, both cases involved contracts containing an arbitration clause and, therefore, are not pertinent to an inquiry into whether an arbitration clause exists. The inquiry in this case is focused on the evidence of the parties' intent to arbitrate, which requires an examination of the correspondence between counsel.

Contract law requires the court examine an entire writing as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *J. M. Davidson*, 128 S.W.3d at 229; *see also Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 901 (Tex. App.—Austin 2006, orig. proceeding) (construing

multiple documents as arbitration agreement).  We "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.  No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 897 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (quoting *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex. 2006) (citations omitted)).  This is true even when contracts consist of multiple documents.  *City of Houston v. Clear Channel Outdoor, Inc.*, 233 S.W.3d 441, 445 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  Accordingly, the correspondence may be considered as a whole because it pertains to the same transaction, even if the letters were executed at different times.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005).

After a review of the record, we conclude that the initial two letters are only part of a series of letters that, when taken together, clearly show the parties did not agree to binding arbitration.  First, and foremost, Glenny's alleged "acceptance" changed material elements of Levin's "offer."  Not only did Glenny change the type of arbitration to "binding," but also required the arbitration be completed within a three-week period.  As this court previously held, "[i]f the purported acceptance contains terms that materially change the offer, the acceptance is actually a rejection and counter-offer." *Komet v. Graves*, 40 S.W.3d 596, 601 (Tex. App.—San Antonio 2001, no pet.) ("[A]ny attempt to change an offer operates as a rejection and counteroffer.  If, however, the party who made the original offer accepts the proposed modifications, then a binding contract exists." (citations omitted)); *see also Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 466 (Tex. App.—Dallas 2006, pet. denied) ("An acceptance must be identical to the offer, or there is no binding contract.").  Here, the

correspondence includes Levin's offer of new individuals to serve as the arbitrator and an attempt to finalize whether the parties were actually going to arbitrate. Ironically, even after the three-week period for arbitration demanded by Glenny, the parties continued to discuss the terms for a potential arbitration to resolve their dispute. Reviewing the correspondence as a whole, we conclude that the parties did not reach an agreement to arbitrate their dispute.

Accordingly, the trial court erred in granting the motion to compel arbitration, and we reverse the order of the trial court and remand this cause for further proceedings consistent with this opinion.

Rebecca Simmons, Justice