**DISSENT; Opinion Filed August 25, 2022**



In The
### Court of Appeals
### Fifth District of Texas at Dallas

**No. 05-20-00795-CV**

**SIMEON GREEN, Appellant**
**V.**
**VELOCITY INVESTMENTS, LLC, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-04336**

## DISSENTING OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Schenck

The majority concludes that Appellant Green waived his right to arbitration by delay in filing his motion to compel arbitration a little over a year after he was sued and though there was minimal discovery or motion practice in the interim. I cannot agree—particularly in light of the brevity of this record—that this delay alone would be sufficient to establish the movant substantially invoked the judicial process under the controlling standard. But, even if I were to agree that Green had substantially invoked the judicial process, I cannot agree that Velocity Investments

met its burden to establish it was actually prejudiced by Green's conduct. Accordingly, I dissent.[1]

## BACKGROUND

Green entered into a contract for the extension of credit with LendingClub Corporation. When Green failed to make all the contracted-for payments, his account was assigned to Velocity Investments.

On March 26, 2019, Velocity Investments filed suit against Green, seeking to enforce the credit agreement and to recover the unpaid balance. Green answered, and the trial court set the case for a bench trial in April of 2020. A week before the trial date, Velocity Investments sought a continuance on the ground that the parties were negotiating a settlement and required additional time to complete those negotiations. Velocity Investments later withdrew the motion.

Green then filed his motion to dismiss, or in the alternative, to stay the proceedings and compel arbitration. The trial court heard the motion before the commencement of trial. Velocity Investments conceded the credit agreement included an arbitration clause, but argued Green waived any right to compel arbitration by waiting to file his motion until "right before trial." The trial court agreed the motion was "untimely" and denied it. Green requested findings of fact

---

[1] Once again, I find it necessary to write separately to emphasize the law governing arbitrations that is binding on this Court and its members, pursuant to our oaths of office to uphold both state and federal law. *See Prestonwood Tradition, LP v. Jennings*, Nos. 05-20-00380-CV, 05-20-00387-CV, 05-20-00388-CV, 05-20-00389-CV, 05-20-00390-CV, 2022 WL 3138799, at *9 (Tex. App.—Dallas Aug. 5, 2022, no pet. h.) (en banc) (Schenck, J., concurring).

and conclusions of law, and the trial court invited him to draft some, but Green did not draft any, and none were signed.  This appeal followed.

## DISCUSSION

The Federal Arbitration Act (FAA) generally governs arbitration provisions in contracts involving interstate commerce.  *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *see also* 9 U.S.C. § 2.  Under the FAA, a presumption exists favoring agreements to arbitrate.  *See Henry*, 551 S.W.3d at 115.  A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement.  *See id.*  If the party seeking to compel arbitration meets this burden, the burden then shifts, and to avoid arbitration, the party opposing it must prove an affirmative defense to the provision's enforcement, such as waiver.  *See id.*

As a preliminary matter, I observe that although the majority opinion quotes the arbitration provision at issue,[2] it does not reach any conclusions regarding its

---

[2] Either party to this Agreement, or any subsequent holder, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section 22 (the "Arbitration Provision"), unless you opt out as provided in section 22(b) below.  **As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy** involving you (or persons claiming through or connected with you), on the one hand, and us and/or **any subsequent holder** (or persons claiming through or connected with us and/or the subsequent holders), on the other hand, relating to or arising out of this Agreement, any Loan Agreement and Promissory Note(s), the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, including (except to the extent provided otherwise in the last sentence of section 22(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement.  Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or

applicability to Velocity Investments' claims.  In the interests of judicial economy, I will simply note my conclusion that Green met his initial burden because the provision's scope is broad and because Velocity Investments asserted these claims as assignee of a party to the credit agreement.  *See Henry*, 551 S.W.3d at 115–16 (holding arbitration clauses that include all "disputes," and not just claims, are very broad and encompass more than claims "based solely on rights originating exclusively from the contract.").[3]

Turning then to the controlling question, I would conclude Velocity Investments has not met its burden to establish waiver.  *See Henry*, 551 S.W.3d at 115 (presumption in favor of arbitration); *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008) (strong presumption against waiver of arbitration); *see also RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016) (per curiam) (party asserting waiver "bears a heavy burden of proof").  Velocity Investments claims Green *impliedly* waived his right to arbitration by his conduct, not that he expressly waived the right.  To establish that he waived his right through substantial invocation

---

otherwise. ***The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.***

(emphasis added).

[3] *See also Roe v. Ladymon*, 318 S.W.3d 502, 511 (Tex. App.—Dallas 2010, no pet.) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005) (orig. proceeding) ("non-signatories to a contract containing an arbitration clause may be required to arbitrate if rules of law or equity would bind them to the contract generally"); *cf. Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 498 (Tex. App.—Dallas 2011, pet. denied) (holding a non-signatory may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from contract but concluding instant non-signatory's claims not based on agreement containing arbitration provision and thus non-signatory could not be compelled to arbitrate).

of the judicial process, Velocity Investments had the burden to prove that (1) Green (not Velocity Investments) substantially invoked the judicial process in a manner inconsistent with his claimed right to compel arbitration, and (2) Velocity Investments suffered actual prejudice as a result of the inconsistent conduct. *See Henry*, 551 S.W.3d at 116.[4]

## I.   GREEN DID NOT SUBSTANTIALLY INVOKE THE JUDICIAL PROCESS

To determine whether a party has substantially invoked the judicial process, courts consider a wide variety of factors and look to the specifics of each case. *See id.* The necessary conduct must go beyond merely participating in the case, including actions as substantial as actually filing the suit or seeking discovery. *See id.* The supreme court has declined to conclude that the right to arbitrate was waived in all but the most unequivocal of circumstances. *See id.*; *compare Perry Homes*, 258 S.W.3d at 595–96 (holding plaintiffs waived right to arbitrate by participating in extensive discovery including hundreds of requests for production and interrogatories, then requesting arbitration fourteen months after filing suit and only four days prior to scheduled trial date), *with G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 512 (Tex. 2015) (holding plaintiffs did not waive arbitration by asserting counterclaims; seeking change of venue; filing motions to

---

[4] Recent U.S. Supreme Court precedent rejects any requirement of proof of prejudice as an "arbitration-specific" federal procedural rule in cases brought in federal court. *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1712–14 (2022). Whether that ruling would govern in state court as a matter of procedure generally, or in cases said to be subject to state arbitration statutes, is unsettled and a matter for the Texas Supreme Court to determine in the first instance. *Robinson v. Homeowners Mgmt. Enters.*, 590 S.W.3d 518, 528 n.46 (Tex. 2019).

designate responsible third parties, for continuance, and to quash depositions; designating experts; and waiting six months to move for arbitration), *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694 (Tex. 2008) (orig. proceeding) (per curiam) (holding party did not waive arbitration by noticing deposition, serving written discovery, and waiting eight months to move for arbitration), *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703–04 (Tex. 1998) (orig. proceeding) (per curiam) (holding party did not waive arbitration by sending eighteen interrogatories and nineteen requests for production and waiting six months to seek arbitration). "Mere delay" in moving to compel is generally not enough "even if it is substantial." *G.T. Leach Builders, LLC*, 458 S.W.3d at 515. In this case, I do not believe the delay is either "substantial" or "enough" given its nature to conclude that Green "substantially invoked" the judicial process.

Here, Velocity Investments argued Green waited to invoke his right to arbitration until eight months after his answer, which included a request Velocity Investments take nothing from its suit; after the expiration of the period of time to answer Velocity Investments' requests for discovery; and in the days before the scheduled trial date. Thus, Velocity Investments relies on Green's delay in filing his motion to compel to argue waiver.

Indeed, Green did nothing to invoke the judicial process at all, other than file an answer; he did not serve any discovery requests or file any other motions. According to statements from the Court at the bench trial, Green contested Velocity

Investments' motion for continuance, but the record contains no transcript of any hearing on that motion or any other record of or basis for Green's objection to the motion. Moreover, Green did not even respond to any discovery requests, and the reporter's record is comprised of fewer than eighteen pages of hearing transcript and a reference to a business records affidavit in the clerk's record. I would not—and cannot—conclude this record constitutes "unequivocal circumstances" establishing Green waived his right to arbitrate by substantially invoking the judicial process. *See Henry*, 551 S.W.3d at 116. He eschewed it altogether.

The majority relies on the timeliness of Green's motion under the court's pretrial order to conclude Green "substantially invoked" the judicial process (i.e., by *not participating in it*) citing almost exclusively persuasive authority. Notably, the pretrial order purported to set no deadline for venue attacks at all or, more particularly, for seeking arbitration—presumably because such motions would obviate every matter that would properly be subject to the scheduling of the proceeding in the trial court. As a matter of fact, the only binding authority purportedly applicable and cited by the majority is a decision from our Court in which the parties spent three years actively litigating the case and jointly participated in "extensive discovery," the appellant had been sanctioned for destruction of evidence and unsuccessfully challenged that order via mandamus proceedings, and the appellee had already revealed its trial strategy. *See Sivanandam v. Themesoft, Inc.*, No. 05-21-00645-CV, 2022 WL 872623, at *6 (Tex. App.—Dallas Mar. 24,

2022, pet. filed) (mem. op.). Therefore, the only binding authority relied upon by the majority is factually distinguishable from the circumstances presented here. *See Perry Homes*, 258 S.W.3d at 590 (questions of waiver determined by "applying totality-of-the-circumstances test on a ***case-by-case basis***") (emphasis added).

Accordingly, I cannot join the majority's conclusion that Velocity Investments met the first part of its burden to establish waiver.

## II. VELOCITY INVESTMENTS FAILED TO ESTABLISH IT SUFFERED ACTUAL PREJUDICE

Even if I were to agree that Green's conduct (or passivity) constituted his substantially invoking the judicial process, I could not conclude Velocity Investments established that it suffered actual prejudice as a result of his conduct. *See Henry*, 551 S.W.3d at 116.

"Prejudice," under binding precedent,[5] in the context of waiver of a contractual right to arbitration means "the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Pilot Travel Ctrs., LLC v. McCray*, 416 S.W.3d 168, 186 (Tex. App.—Dallas 2013, no pet.) (quoting *Perry Homes*, 258 S.W.3d at 597). At the hearing on Green's motion, Velocity Investments' sole argument was the timing of the motion—"right before trial and right after our conference about the motion to continue." Thus, again

---

[5] *See infra* n.4.

Velocity Investments relied on Green's delay in filing his motion—here, thirteen months after the suit was filed. But, as the supreme court has held, "while delay may be a factor both in terms of whether the movant has substantially invoked the judicial process and whether the non-movant has suffered prejudice, mere delay is not ordinarily enough, even if it is substantial." *G.T. Leach Builders, LLC*, 458 S.W.3d at 515.

The majority concludes both delay and damage to Velocity Investments' legal position are established by the circumstances of this case. As part of the calculation of delay, the majority includes "the two years of Velocity's collection efforts before filing suit." I cannot agree with the majority's consideration of any of this period of time prior to any party approaching the court as relevant to the delay or prejudice analysis, as we have been repeatedly instructed by the supreme court, "prejudice, in this context, refers to an 'inherent unfairness caused by a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *G.T. Leach Builders, LLC*, 458 S.W.3d at 515 (quoting *In re Citigroup Glob. Mkts., Inc.*, 258 S.W.3d 623, 625 (Tex. 2008) (orig. proceeding) (per curiam)). Nor can I agree with the majority's characterization of the case as having "already lingered on the court's docket" where suit was filed in March of 2019 and initially set for trial on April 27, 2020, and took place on April 29, 2020.[6] Instead, the delay the majority

---

[6] In fact, in light of the reality that the case took place during a global pandemic and in a year where the clearance rates for district courts were below 100 percent, indicating that backlogs were growing, I

–9–

cites as so excessive as to be prejudicial to the litigants is little more than one year after Velocity Investments filed its suit.[7]

The majority concludes the record establishes damage to Velocity Investments' legal position from the evidence that Green filed his motion after engaging in settlement negotiations with Velocity Investments and after Velocity Investments withdrew its own motion for continuance two days before trial. However, as the majority notes, all this evinces at most "an inconsistent intent as to whether the case would proceed in a judicial forum" by Green, and I struggle to understand how Green's intent alone prejudiced or otherwise affected Velocity Investments.[8]

---

would go so far as to say this case proceeded as expeditiously as could be hoped. *See* Fiscal Year 2020 Annual Statistical Report for the Texas Judiciary, available at https://www.txcourts.gov/media/1451853/fy-20-annual-statistical-report_final_mar10_2021.pdf (last visited Aug. 25, 2022).

[7] One might observe that the order and judgment appealed from in this case were both signed more than two years ago. One might also observe that this appeal from an interlocutory order denying arbitration under the FAA is an accelerated appeal as our legislature expressly authorized by statute and recently recognized by the supreme court. *See* TEX. CIV. PRAC. & REM. CODE § 51.016; *In re Whataburger Rests. LLC*, 645 S.W.3d 188, 190 (Tex. 2022) (orig. proceeding). Furthermore, parties are indeed entitled to resolution and justice without undue delay or denial of their constitutional rights. *See Prestonwood Tradition, LP*, 2022 WL 3138799, at *12 (Partida-Kipness, J., dissenting); *see also* TEX. CONST. art. I, § 19.

[8] As for the two opinions from this Court that the majority cites as support, neither is germane. In *Sivanandam*, the record included a delay of three years that appellee had spent litigating the case, appellee's evidence of "the extensive discovery that had taken place in the case and of the fact that Sivanandam noticed more than half of the depositions taken," that appellant waited to move to compel arbitration until after being sanctioned for destruction of evidence, and appellee's attorney's assertions that it had revealed its trial strategy through its previously filed witness and exhibit lists. *See Sivanandam, Inc.*, 2022 WL 872623, at *6. The second opinion noted a delay twice as long as the case here and the discovery included multiple sets of interrogatories and requests for production and depositions. *See Fast v. Hauk Custom Pools, LLC*, No. 05-21-00165-CV, 2022 WL 278235, at *4 (Tex. App.—Dallas Jan. 31, 2022, no pet.) (mem. op.).

Finally, the majority concludes granting the motion to compel arbitration after Green's "inconsistent intent"[9] and delay would force Velocity Investments to begin the discovery process anew and without the benefit of deemed admissions[10] and while potentially facing an expensive and lengthy discovery process with the AAA.[11]

In all events, the discovery in this case was minimal, such that beginning it anew hardly supports a conclusion of prejudice. According to the record in this case, as well as Velocity Investments' brief, the only discovery propounded in this case was Velocity Investments' fourteen (14) requests for production, fifteen (15) requests for admission, five (5) interrogatories, as well as requests for disclosure pursuant to rule 194. And, as I summarized above, Green propounded no discovery of his own nor did he serve any motions on Velocity Investments before his motion

---

[9] As support for the conclusion that Green demonstrated an inconsistent intent, the majority points to the record indicating that Velocity Investments moved for a continuance based on the parties' settlement negotiations and later withdrew that motion. From those facts, the majority infers Green delayed filing his motion until after settlement negotiations failed and his hope of continuance had vanished. Even assuming I agreed these were reasonable inferences—and I expressly do not—these facts do not establish Green's failures to achieve a satisfactory result through litigation before turning to arbitration. *See Holmes, Woods & Diggs v. Gentry*, 333 S.W.3d 650, 654 (Tex. App.—Dallas 2009, no pet.) (citing *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (orig. proceeding)) ("The judicial process is substantially invoked **when the party seeking arbitration has taken specific and deliberate actions**, after the filing of the suit, that are inconsistent with the right to arbitrate or has actively tried, but **failed to achieve a satisfactory result through litigation** before turning to arbitration.") (emphases added).

[10] Of course, Green may have been permitted to withdraw those deemed admissions upon a showing of good cause and no undue prejudice. *See, e.g.*, *Stratton v. Robins*, No. 05-19-00055-CV, 2020 WL 415929, at *5 (Tex. App.—Dallas Jan. 27, 2020, no pet.) (mem. op.) (citing *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005)).

[11] If nothing else, the majority's conclusions raise the question of how a party would be "entitled" to default sanctions in the face of wholesale non-participation by the opponent in litigation that was governed by an arbitration clause that the party filing suit eschewed. One might analogize to a defendant who is not subject to service because of a lack of personal jurisdiction contacts with the forum electing to simply ignore the resulting proceeding and judgment. It may irritate the party who sued in the wrong forum, but the "prejudice" resulting from the suit where it is inherently subject to attack is not a cognizable loss or prejudice.

to compel. Moreover, this Court has previously rejected a similar argument regarding a party's litigation efforts in court being "wasted" and instead held that a party's efforts in requesting and obtaining discovery are not prejudicial. *See In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131, 142 (Tex. App.—Dallas 2009) (orig. proceeding) (citing *Perry Homes*, 258 S.W.3d at 600).

As for the potential risk of facing "an expensive and lengthy discovery process with the AAA," such a pronouncement is at odds with our previous observance that "the absence of broad discovery in arbitration is 'one of its most distinctive features.'" *See Sivanandam, Inc.*, 2022 WL 872623, at *6 (quoting *Perry Homes*, 258 S.W.3d at 599) (footnote omitted)). Further, the dispute here is whether the defendant failed to make contracted-for payments on an extension of credit. I fail to see how such a dispute could produce an expensive or lengthy discovery process, whether in the trial court or in arbitration proceedings.

Therefore, I cannot agree with any of the majority's analysis supporting the conclusion that Velocity Investments established it was actually prejudiced by Green's conduct. Instead, the majority opinion appears to run counter to binding authority.[12] *See G.T. Leach Builders, LLC*, 458 S.W.3d at 515 ("mere delay is not ordinarily enough, even if it is substantial").

---

[12] Separate and apart from my disagreement with the majority's conclusions, I further disagree with the majority's insistence on applying an abuse-of-discretion standard of review to the trial court's decision whether to compel arbitration pursuant to an agreement to arbitrate where the U.S. Supreme Court and our own supreme court have made clear that the question of enforcement of an agreement is reviewed de novo. *See Prestonwood Tradition, LP*, 2022 WL 3138799, at *11 (Schenck, J., concurring) (citing *First Options*

–12–

Because I would conclude the trial court erred in failing to compel arbitration, I would further conclude the trial court erred in failing to stay further litigation of Velocity Investments' claims. *See, e.g.*, *McCray*, 416 S.W.3d at 188; *see also* 9 U.S.C. § 3 (mandating trial court stay litigation of issues subject to arbitration). Accordingly, I would reverse the trial court's order denying Green's motion to compel arbitration and for a stay of the trial court proceedings, reverse the trial court's judgment in favor of Velocity Investments, and remand the case to the trial court for further proceedings consistent with this dissenting opinion. Because the majority does not, and because I disagree with the majority's conclusion that Velocity Investments met its burden to show waiver, I dissent.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

200795DF.P05

---

*of Chi., Inc. v. Kaplan*, 514 U.S. 938, 941 (1995); *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 630 (Tex. 2018)).